NO. _____

IN THE
COURT OF CRIMINAL APPEALS FOR TEXAS

\* \* \* \* \* \* \* \* \* \* \* \*

CLEVELAND NIXON

V.

THE STATE OF TEXAS

\* \* \* \* \* \* \* \* \* \* \* \*

ON APPEAL FROM THE FIFTH COURT OF APPEALS AND
FROM CRIMINAL DISTRICT COURT NO. 6
OF DALLAS COUNTY, TEXAS
THE HON. JEANINE HOWARD, PRESIDING
TRIAL COURT NO. F-1121243

\* \* \* \* \* \* \* \* \* \* \* \*

PETITION FOR DISCRETIONARY REVIEW

\* \* \* \* \* \* \* \* \* \* \* \*

DYER & LIBBY
James H. Dyer
Bar Card No. 06315700
Joseph D. Libby
Bar Card No. 12318500
3501 Prairie St., Suite 100
Houston, Texas 77002
(713) 222-7757  phone
(713) 222-7758  fax
Email: josephlibbyattorney@yahoo.com

ATTORNEYS FOR PETITIONER

# IDENTITY OF JUDGE, PARTIES AND COUNSEL

The following is a list of the Judge and all parties and counsel in this matter:

Judge:     Jeanine Howard
Judge of the Criminal District Court No. 6 of Dallas County, Texas
133 N Riverfront Blvd.
Dallas, Texas 75007
Phone: 972-739-3910
Fax: 214-875-2342
Email:  JLHoward@dallascounty.org


Petitioner:  Cleveland Nixon

Attorneys for Petitioner at the trial court level:

L. Charles Humphreys
Bar Card No. 10277010
Humphreys & Peterson Law Firm, P.L.L.C.
5502 Broadway
Garland, Texas 75043
(972) 303-4529  phone
(972) 303-1673  fax

James E. Polk, II
Bar Card No. 16089500
Attorney and Counselor at Law
2201 Main Street
Suite 1018, Lock Box 107
Dallas, Texas 75201
(214) 742-9805  phone
(214) 742-7212  fax

Kristen R. Brown
Bar Card No. 24081458
Attorney at Law
1701 North market Street, Suite 402
Dallas, Texas 75202
(214) 446-3909  phone

2

(214) 481-4868  fax

Attorneys for Petitioner at the appellate court level:

DYER & LIBBY
James H. Dyer
Bar Card No. 06315700
Joseph D. Libby
Bar Card No. 12318500
3501 Prairie St., Suite 100
 Houston, Texas 77002
(713) 222-7757  phone
(713) 222-7758  fax
Email: josephlibbyattorney@yahoo.com

Respondent:  The State of Texas

Attorneys for Respondent at the trial court level:

Craig Watkins, former District Attorney for Dallas County
State Bar No. 00791886

Josh Healy, Assistant District Attorney, Dallas County
State Bar No. 24026288

Attorneys for Respondent at the appellate court level:

Susan Hawk, District Attorney for Dallas County
133 N Riverfront Blvd.
Dallas, Texas 75207
Phone:  214-653-3600
Fax: 214-653-5774
Email:  shawk@dallascounty.org

# TABLE OF CONTENTS

Identity of Judge, Parties and Counsel ........................................................................1

Table of Contents ...........................................................................................................4

Index of Authorities ......................................................................................................8

Statement of Oral Argument .......................................................................................11

Statement of the Case ..................................................................................................12

Statement of Procedural History ................................................................................13

Grounds for Review ....................................................................................................14

     I.      Whether the Fifth Court of Appeals erred in holding that the trial court was not restricted to the evidence presented at the October 14, 2014 request for bond on appeal hearing under 44.04 (c) C.C.P.?

     II.     Whether the Fifth Court of Appeals erred in holding that "The trial court is not required to use magic words to establish that it has considered the evidence previously presented to it."?

     III.    Whether the Fifth Court of Appeals erred in considering evidence not brought before it in the appellate record?

     IV.    Whether the trial court as affirmed by the Fifth Court of Appeals denied Petitioner due course of law under art. 1 § 19 of the Texas Constitution in its opinion which lessened the defendant's right to know the evidence considered by the court against the defendant and consequently deprived the defendant of his right to a meaningful hearing ?

     V.     Whether the trial court as affirmed by the Fifth Court of Appeals denied Petitioner due process of law under the Fifth,

Eighth and Fourteen Amendments to the United States Constitution in its opinion which lessened the defendant's right to know the evidence considered by the court against the defendant and consequently deprived the defendant of his right to a meaningful hearing?

VI.    Whether the trial court abused its discretion by denying Petitioner a bond on appeal?

VII.    Whether any of the following findings are supported by the record of the hearing on the 44.04(c) request for bond pending appeal?

1.    The Court finds that the Defendant violated the no contact order in place and had prohibited contact with the complainant Keisha Pope while on probation.

2.    At the hearings on the motion to revoke, which were conducted in September and October of 2014, the Court heard testimony that the Defendant and the complainant had a history of violent confrontations. For example, during their relationship, the Defendant assaulted both of the complainant's sons. One son was slammed against the wall and the other son was punched in the head and face, while trying to help protect their mother from being assaulted by Defendant.

3.    In March, 2014, the Complainant reported that the Defendant assaulted her by strangulation and she injured her arm. During this timeframe, the Complainant also reportedly fell out of a car the Defendant was driving.

5

4. In July of 2014, the Defendant had the Complainant arrested after coming to his house uninvited. The Defendant has asked the Complainant to stay away from him.

5. On 8/14/14, the Complainant went to the emergency room for a knee injury she suffered when the Defendant grabbed her by the arm and threw her down during an argument with the Defendant. The Defendant and the complainant were arguing over his affair with a co-worker.

6. On August 27, 2014, the Complainant called the Grand Prairie police department and reported that the Defendant choked her, beat her, and sat on her chest.

7. On October 27, 2014, another assault report was made by the Complainant.

VIII. Whether there is insufficient evidence to support the trial court's finding "That the defendant is a continuing threat to the Complainant and that there is a high likelihood that the Defendant will commit another assaultive offense against the complainant if allowed an appeal bond."?

Argument.................................................................................17

Reasons for Granting This Petition.......................................35

Prayer for Relief...................................................................35

Certificate of Service............................................................36

Certificate of Compliance ....................................................37

Appendix

6

A.     Opinion of the Court of Appeals

B.     Trial court order denying bond on appeal

C.     Order of the Court of Appeals by Justice Ada Brown, May 7, 2015

D.     Online website docket of Court of Appeals

E.     Letter of Court Reporter requesting that all five volumes be filed in this appeal, May 6, 2015

F.     Reporter's Record Volume 5

G.     The State's Brief in the Court of Appeals

H.     The Supplemental Clerk's Record

I.     Petitioner's designation of reporter's record

J.     Petitioner's designation of clerk's record

## INDEX OF AUTHORITIES

**Cases**

*Ballard v. Texas,*
   438 F.2d 640 (5th Cir. 1971) ......................................................................23

*Barrientez v. State,*
   500 S.W.2d 474, 475 (Tex. Crim. App. 1973) .....................................20

*Black v. Romano,*
   471 U.S. 606, 611-12, 105 S.Ct. 2254, 85 L.Ed.2d 1756....................................25

*Boddie v. Connecticut,*
   401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)............................24

*Bradley v. State,*
   564 S.W.2d 727, 730-732 (Tex. Crim. App. 1978 *en banc*) ................... 21, 24, 33

*Broussard v. State,*
   598 S.W.2d 873, 876 (Tex. Crim. App.  1980 *en banc*)......................................21

*Brown v. Wilmot,*
   572 F.2d 404 (2d Cir. 1978)..............................................................................23

*Cleveland Bd. of Educ. v. Loudermill,*
   470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).......................................24

*Dervishi v. State,*
   (unpublished opinion 2-04-495-CR Fort Worth delivered May 26, 2005) .. 20, 29

*Eldridge v. State,*
   731 S.W.2d 618 (Tex. App. – Houston [1st Dist.] 1987).............................. 19, 25

*Ex parte Spaulding,*
   612 S.W.2d 509, 511 (Tex. Crim. App. 1981) .....................................................29

*Ex parte Turner,*
   612 S.W.2d 611, 612 (Tex. Crim. App. 1981) .....................................................20

*Ex parte Utley*,
   2001 WL 301475, 05-00-01336-CR (Tex. App. – Dallas 2001 not designated for publication) ...............................................................................................31

*Ex Parte Williams,*
   630 S.W.2d 803, 804 (Tex.App. -- San Antonio 1982), PDR refused ................24

*Finetti v. Harris,*
   609 F.2d 594 (2d Cir. 1979).................................................................................23

*Gagnon v. Scarpelli,*
   411 U.S. 778, 781-82, 93 S.Ct. 1756, 1759-760, 36 L. Ed2d 656 (1973).... 24, 25

*Kaman v. State*,
   923 S.W.2d 129, 132 (Tex. App. – Houston [1st Dist.] 1996)............................34

*Matthews v. Eldridge*
   424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).............................19

*Moore v. State*,
   11 S.W.3d 495, 499 (Tex. App. – Houston [14th Dist.]2000, no pet.).................24

*Morrissey v. Brewer*,
   408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).........................................25

*O'Hern v. State,*
   Tex.Cr. App., 527 S.W.2d 568 .............................................................................22

*Putnam v. State*,
   582 S.W.2d 146 (Tex. Crim. App. 1979) ...................................................... 30, 34

*Rogers v. State*,
   640 S.W.2d 248, 252 (Tex. Crim. App 1982) ......................................................25

*Ruedas v. State*,
   583 S.W.2d 520 (Tex. Crim. App. 1979) .............................................................25

*Shockley v. State*,
717 S.W.2d 922 (Crim. App. 1986 *en banc*) .......................................... 19, 20, 23

*State v. Cobb*,
851 S.W.2d 871 (Tex. Crim. App. 1993 *en banc*)....................................... 25, 26

*Staten v. State,*
328 S.W.3d 901 (Tex. App. – Beaumont 2010) ...................................................24

*Stephenson v. State*,
Tex. Cr. App., 500 S.W.2d 855 ......................................................................22

*Taylor v. State*,
2014 WL 5463810, 11-14-00208 (Tex. App. – Eastland 2014 unpublished
memorandum opinion)......................................................................................32

**Statutes**
Tex. Code of Crim. Procedure § 44.04 (c).................................................. 27, 29, 30

**Other Authorities**
Black's Law Dictionary (Revised 4th Ed., 1968).......................................................31

**Rules**
Rules of Appellate Procedure Rule 66.3................................................................35

**Constitutional Provisions**
art. 1 § 19 of the Texas Constitution....................................................... 14, 19, 25
Fifth, Eighth and Fourteenth Amendments to the United States Constitution ........19

## STATEMENT REGARDING ORAL ARGUMENT

The Petitioner believes that the issue of requiring the record to reflect the evidence that the trial court is considering against the Petitioner at the hearing is one of importance to the jurisprudence of the State of Texas.

However the Petitioner believes that the issues reflected in this Brief are set out with sufficient clarity that the Petitioner's position and legal arguments are clear.

The Petitioner remains without his liberty as a result of the Order denying bond on appeal in this case, and does not wish to prolong the appeal process.

However, in the event that the State seeks oral argument and that this court believes that oral argument may be of assistance in resolving this appeal, counsel for Petitioner is prepared to make an oral argument.

## STATEMENT OF THE CASE

**Nature of the case:** This case involves an accelerated appeal from the denial of bail or bond on appeal following a contested proceeding to adjudicate guilt and an assessment of five years of incarceration. (Supp. CR p. 8 and RR Vol. 5 p. 4 ll. 9 - 16) The trial court incorrectly refers to the proceeding as a revocation of probation as opposed to an adjudication proceeding. (RR Vol. 5 p. 4 ll. 9 - 16) There is a separate appeal pending in the Court of Appeals Fifth District of Texas at Dallas [No. 05-14-01627-CR] appealing from the adjudication proceeding.

**Course of Proceedings:** A formal hearing for bail on appeal was held on October 14, 2014 and is contained in volume 5 of the Reporter's Record. On May 7, 2015, Justice Ada Brown of the Fifth Court of Appeals *sua sponte* ordered the Clerk to file only Volume 5 of the Reporter's Record in this appeal. (App. C) The State did not move for any additional reporter's record to be made part of the record on appeal in this appeal. The Fifth Court of Appeals entered no further or additional order(s) regarding the record on appeal, other than the Order by Justice Brown. (APP C and D)

**Trial Court's disposition of the case:** On October 14, 2014, following a contested hearing on the oral Motion for Bail Pending Appeal, the trial court denied the motion for bond on appeal. (RR vol. 5 p. 16 ll. 8 - 9) On April 2, 2015, following a mandamus proceeding, [No. 05-15-00263-CV] the trial court entered a

written order denying bond on appeal and in the same order entered findings of fact.  (App. B) This appeal is taken from the order denying bond on appeal. (App. B)  Petitioner's counsel filed a timely Notice of Appeal. (Supp. CR p. 16, App. H)

## STATEMENT OF PROCEDURAL HISTORY

1. The date that the opinion of the Fifth Court of Appeals was handed down is August 4, 2015.

2. No motion for rehearing was filed.

# GROUNDS FOR REVIEW

I.    Whether the Fifth Court of Appeals erred in holding that the trial court was not restricted to the evidence presented at the October 14, 2014 request for bond on appeal hearing under 44.04 (c) C.C.P.?

II.   Whether the Fifth Court of Appeals erred in holding that "The trial court is not required to use magic words to establish that it has considered the evidence previously presented to it."?

III.  Whether the Fifth Court of Appeals erred in considering evidence not brought before it in the appellate record?

IV.   Whether the trial court as affirmed by the Fifth Court of Appeals denied Petitioner due course of law under art. 1 § 19 of the Texas Constitution in its opinion which lessened the defendant's right to know the evidence considered by the court against the defendant and consequently deprived the defendant of his right to a meaningful hearing ?

V.    Whether the trial court as affirmed by the Fifth Court of Appeals denied Petitioner due process of law under the Fifth, Eighth and Fourteen Amendments to the United States Constitution in its opinion which lessened the defendant's right to know the evidence considered by the court against the defendant and consequently deprived the defendant of his right to a meaningful hearing?

VI.   Whether the trial court abused its discretion by denying Petitioner a bond on appeal?

VII.  Whether any of the following findings are supported by the record of the hearing on the 44.04(c) request for bond pending appeal?

14

K. The Court finds that the Defendant violated the no contact order in place and had prohibited contact with the complainant Keisha Pope while on probation.

L. At the hearings on the motion to revoke, which were conducted in September and October of 2014, the Court heard testimony that the Defendant and the complainant had a history of violent confrontations. For example, during their relationship, the Defendant assaulted both of the complainant's sons. One son was slammed against the wall and the other son was punched in the head and face, while trying to help protect their mother from being assaulted by Defendant.

M. In March, 2014, the Complainant reported that the Defendant assaulted her by strangulation and she injured her arm. During this timeframe, the Complainant also reportedly fell out of a car the Defendant was driving.

N. In July of 2014, the Defendant had the Complainant arrested after coming to his house uninvited. The Defendant has asked the Complainant to stay away from him.

O. On 8/14/14, the Complainant went to the emergency room for a knee injury she suffered when the Defendant grabbed her by the arm and threw her down during an argument with the Defendant. The Defendant and the complainant were arguing over his affair with a co-worker.

P.      On August 27, 2014, the Complainant called the Grand Prairie police department and reported that the Defendant choked her, beat her, and sat on her chest.

Q.      On October 27, 2014, another assault report was made by the Complainant.

VIII.   Whether there is insufficient evidence to support the trial court's finding "That the defendant is a continuing threat to the Complainant and that there is a high likelihood that the Defendant will commit another assaultive offense against the complainant if allowed an appeal bond."?

**ARGUMENT GROUNDS I – V**

The following is taken from the opinion of the Dallas Court of Appeals in this case, but is not found in the appellate record in this case:

This appeal is from an order denying bond on appeal entered after a mandamus proceeding [05-15-00263-CV] to compel the trial court to make a written order for purposes of appeal from the bond denial hearing on October 14, 2014 (RR Vol 5, App. F).

At the beginning of the hearing for a bond on appeal pursuant to 44.04(c) of the Texas Code of Criminal Procedure the court made the following statement on the record:

> " THE COURT:   With the E.  Okay.  Back on September 29, 2004, (sic) we had a contested revocation hearing, and at that time you had plead true – plead not true, and after hearing the additional testimony on that date, combined with testimony from September 25, the Court found you had violated your probation, granted the state's motion, revoked your probation, found you guilty and charged of injury (sic) to a child and set your punishment at five years confinement in the penitentiary.
>
> Your attorney later that day, or two days after that, I should have that on another docket sheet documented, I'm not asking you to get it right now, but you approached me about an appeal bond, and I denied that request based on the testimony I had heard, you know, during the revocation hearing and pursuant to Article 44.04(c) of the Code of Criminal Procedure.
>
> Now, Mr. Humphreys, today you want to put a little more testimony on the record concerning the appeal bond?" (RR Vol. 5 page 4 ll. 9 – 24, see App. F)

At the conclusion of the hearing on the oral 44.04 (c) bond on appeal motion the trial court concluded with this statement:

> "THE COURT: All right. I'm going to deny your motion on the bond. Again, it's the same ruling as before. I'm going to deny bond pursuant to Article 44.04(c) of the Code of Criminal Procedure." (RR Vol. 5 page 16 ll. 8 – 11, see App. F)

As of October 14, 2014 there had not been any testimony adduced of any nature and at any time in regard to the oral request for an appeal bond pursuant to 44.04 (c). (RR Vol. 5)

There was no written motion upon which the hearing on October 14, 2014 was held. (RR Vol. 5)

The statement of the trial court at the beginning of the hearing refers to non existent testimony. (RR Vol. 5 page 4) The statement by the trial court, who could have stated for the record that the court was taking judicial notice of the testimony from the prior hearings, but did not, does not indicate that the court is considering any evidence in the case other than the testimony which is being presented to the court on October 14, 2014. (RR Vol. 5 page 4)

The hearing on the oral motion for an appeal bond under 44.04 (c) was a finite hearing on the matter of a bond on appeal. (RR Vol. 5)

Each case or type of case is considered independently in the analysis of what is required for a meaningful hearing. In the criminal context, due course of law and due process of law are violated when there is a lack of notice to the Defendant

18

of what is being offered in evidence and considered by the court because as a fundamental due course and due process tenant, the defendant is deprived of fair notice of the evidence against him and an opportunity to respond to that evidence.

This is at least part of the reasoning behind requiring judicial notice of testimony and evidence offered in a separate hearing, because it gives the Defendant notice of what the court is being asked to consider, or if the judicial notice is recited by the court itself, it gives the defendant notice of what the court is intending to consider that is not apparent in the record. Additionally, the defendant is then afforded an opportunity to object to the taking of judicial notice.

A meaningful hearing and its elements and balancing tests were extensively discussed by the United States Supreme Court in the case of *Matthews v. Eldridge* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

In the matter of a deferred adjudication case, the defendant is entitled to due course of law under art. 1 § 19 of the Texas Constitution and also entitled to due process of law under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution. See *Eldridge v. State*, 731 S.W.2d 618 (Tex. App. – Houston [1st Dist.] 1987) and *Shockley v. State*, 717 S.W.2d 922 (Crim. App. 1986 *en banc*).

In the matter of a bond on appeal, assuming the statutory qualifications are met, the defendant is entitled to due course of law under art. 1 § 19 of the Texas Constitution and is also entitled to due process of law under the Fifth, Eighth and

19

Fourteenth Amendments to the United States Constitution. See *Shockley v. State*, 717 S.W.2d 922 (Crim. App. 1986 *en banc*)

Petitioner's counsel requested that Volume 5, which represented the entire hearing on the 44.04 (c) bond on appeal request. be filed in this case. (App. I) The Court reporter attempted to file the entire record in this case. (App. E) The Dallas Court of Appeals, *sua sponte*, entered its order signed by Justice Ada Brown, that only volume 5 be filed in this appeal. (App. C) The State never requested or attempted to supplement the reporter's record, and almost the entirety of its brief is outside the record of this appeal. (App. G Brief of Appellee) It is unknown how the Dallas Court of Appeals arrived at an Opinion referencing facts that are neither in reporter's record volume 5 nor in the clerk's record before the appeals court.

In the case of *Dervishi v. State*, (unpublished opinion 2-04-495-CR Fort Worth delivered May 26, 2005) the court of appeals stated:

> "At the hearing on Dervishi's motion to set bond, the trial court took judicial notice of the court's file and the proceedings of the trial on the underlying offense, and heard testimony from Dervishi."

Also in footnote 3 the Second Court of Appeals stated in *Dervishi*:

> "3. See *Ex parte Turner*, 612 S.W.2d 611, 612 (Tex. Crim. App. 1981) (holding taking of judicial notice at habeas corpus hearing of evidence adduced at prior revocation hearing before same judge proper); *Barrientez v. State*, 500 S.W.2d 474, 475 (Tex. Crim. App. 1973) (holding trial judge presiding over

20

revocation hearing could take judicial notice of evidence adduced at criminal trial over which he presided).”

In the case of *Broussard v. State*, 598 S.W.2d 873, 876 (Tex. Crim. App. 1980 *en banc*) Presiding Judge Onion in a dissent stated:

> “… It is not proper for this court to look to another appellate record to supply any deficiency in the proof of another case under consideration on appeal.” Citations omitted.

In the case of *Bradley v. State*, 564 S.W.2d 727, 730-732 (Tex. Crim. App. 1978 *en banc*) written by Judge Odom, the Court of Criminal Appeals, in a case of an appeal from an order revoking probation, stated:

> “We draw a distinction between the obligation to secure inclusion in the record on appeal of material that was part of the record in the proceedings in the trial court and the obligation urged by the State, that the appealing party go beyond the record to secure and place in the record matter that is part of the State’s case. It is proper that the appealing party be required to present as complete a record of the trial proceedings as is necessary to consider and dispose of the issues urged on appeal. Here, the complete record of the probation revocation proceeding has been made a part of the record on appeal. It is not proper to require the appellant to go beyond that trial record to make the State’s case against himself. In short, we draw a distinction between the burden on the appellant to bring from the trial record the matter he relies on for appeal issues and the burden on the State to bring to the trial record the evidence it relies on to meet its burden of proof. Appellant has presented a complete record; the State did not meet its burden to present the material relied on to meet its burden of proof in a manner capable of reflection in the trial record, so that a meaningful review could be had on the appellate record in this Court.

21

Although this record reflects all that occurred at the hearing on the motion to revoke probation, it does not reflect the content of the matters judicially noticed by the trial court upon the State's motion and necessary to meet the State's burden of proof. While the theory allowing judicial notice of a fact is that the fact 'is so easily determinable with certainty from sources considered reliable, it would not be good sense to require formal proof.' 1 McCormick and Ray, Texas Law of Evidence, 2nd ed., Sec. 151, this does not dispense with the requirement, for purposes of review, that the facts so noticed be apparent from the record. Under the Barrientez rule for revocation of probation hearings, the facts judicially noticed here were matters of testimony heard in the prior criminal trial, i.e., that certain witnesses gave certain testimony. Those facts, i.e., what the testimony was, are not shown in this record and are not known to this Court, and yet, to dispose of the issue of the sufficiency of the evidence raised in this case, such facts judicially noticed must be made known to this Court. The statement in the record that judicial notice was being taken of unstated facts is not a sufficient presentation of the matter relied on by the State to meet its burden of proof such as to be meaningful to this Court and to allow disposition of the issue raised in this appeal. How are we to dispose of this matter?

. . . .

The defect to be avoided or cured is the failure of the record to reflect the fact or facts judicially noticed by the trial court. The defect may be avoided in the first instance by precisely reciting such facts for the record or placing them in the record. For judicial notice of such facts as here considered, this may be done by placing the transcribed court reporter's notes, appropriately identified, into the record, as was done in O'Hern v. State, Tex.Cr. App., 527 S.W.2d 568, or, if the matter is not excessively long, by reading the testimony judicially noticed into the record, as was done in Stephenson v. State, Tex. Cr. App., 500 S.W.2d 855."

22

In a third *en banc* opinion from the Texas Court of Appeals, *Shockley v.*

*State*, 717 S.W.2d 922 (Tex. Crim App. 1986 *en banc*) Justice Miller in his

concurring Opinion caused to be published the "thinking" of the Court of Criminal

Appeals as to the constitutional protections afforded a defendant in a hearing on

bail pending appeal. The *Shockley* opinion has been quoted by various Courts of

Appeal in Texas as to the following aspects of Constitutional protections provided

in a 44.04 hearing. The Court of Criminal Appeals in *Shockley*, having determined

that a 44.04 bail request provided due process protection to the eligible convicted

defendant, the Court of Criminal Appeals, proceeded to address the issue of:

> "II.   How Much Due Process is Required Before the Trial
> Court May Deny Bail Pending Appeal?
>
>             . . . .
>
>        In examining the meaning of due process, once a state
> has made provision for bail pending appeal, the federal courts
> have stated: 'the Eighth and Fourteen Amendments require that
> it not be denied arbitrarily or unreasonably.' *Finetti, supra* at
> 599; *Brown v. Wilmot*, 572 F.2d 404 (2d Cir. 1978); *Ballard,*
> *supra*. However this does not clarify what due process would
> have to be supplied before a decision to deny bail would not be
> arbitrary or unreasonable. To determine the quantum of due
> process required, we must look to the basic ingredients of due
> process itself.
>
>             . . . .
>
>        We now balance those competing interests. First, a
> defendant's private interest in retaining liberty while his appeal
> is pending cannot be dismissed as insignificant. The

23

opportunity to remain at liberty pending appeal is a 'substantial right.' *Williams, supra at 804.* The importance of liberty to a defendant who is seeking review of a conviction is no less important than the liberty he enjoys before trial. Therefore, we accord great weight to defendant's private interest in retaining liberty while his appeal is pending.

. . . .

The nature of the hearing prior to denial of bond pending appeal does not require a full adversarial proceeding extant in a criminal trial. As the Supreme Court has indicated, '[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.' *Cleveland, supra* 105 S.Ct. at 1495, quoting *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). What is required is that the trial court provide the defendant with reasonable notice that it intends to deny bail pending appeal and allow the defendant a meaningful opportunity to be heard."

In the case of *Staten v. State,* 328 S.W.3d 901 (Tex. App. – Beaumont 2010) the Beaumont Court of Appeals stated:

"While a defendant at a revocation proceeding need not be afforded the full range of constitutional and statutory protections that are available in the trial of a criminal case, a person on community supervision is entitled to certain due process protections. *Gagnon v. Scarpelli*, 411 U.S. 778, 781-82, 93 S.Ct. 1756, 1759-760, 36 L. Ed2d 656 (1973); *Bradley v. State*, 564 S.W.2d 727, 729-30 (Tex. Crim. App. 1978); *Moore v. State*, 11 S.W.3d 495, 499 (Tex. App. – Houston [14th Dist.] 2000, no pet.) In *Scarpelli*, the United States Supreme Court recognized that due process protections extend to state revocation proceedings because the revocation deprives an individual of a conditional liberty, 411 U.S. at 781-82; 93 S.Ct. 1756. Due process in connection with community supervision

24

revocation proceedings, entitles a defendant to (1) the written notice of the claimed violations of the terms of the community supervision order; (2) the disclosure of the evidence against him; (3) the opportunity to be heard in person and to present witnesses and documentary evidence; (4) a neutral and detached hearing body; (5) the opportunity to cross-examine adverse witnesses, 'unless the hearing body specifically finds good cause for not allowing confrontation [;]' and (6) a written statement by the fact-finder as to the evidence relied on and reasons for revoking community supervision. See *Black v. Romano*, 471 U.S. 606, 611-12, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985); *Scarpelli*, 411 U.S. at 786, 93 S.Ct. 1756. The defendant who has been placed on community supervision is also protected by the due course of law provisions of the Texas Constitution. Tex. Const. art. I, § 19; *Rogers v. State*, 640 S.W.2d 248, 252 (Tex. Crim. App 1982)."

In the case of *Eldridge v. State*, 731 S.W.2d 618 (Tex. App. – Houston [1st Dist.] 1987) the Houston First Court of Appeals looked to *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) for what due process requires in probation revocation cases and noted:

"… They include: written notice of the claimed violations of probation, **disclosure to the probationer of the evidence against him,** the opportunity to be heard in person, and by counsel, and to present witnesses, the right to confront and cross-examine adverse witnesses, a 'neutral and detached' hearing body and a written statement by the factfinder as to the evidence relied on and the reasons for revoking probation. *See also Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Ruedas v. State*, 586 S.W.2d 520 (Tex. Crim. App. 1979)" *emphasis ours*

In 1993, in the case of *State v. Cobb*, 851 S.W.2d 871 (Tex. Crim. App. 1993 *en banc*), this Court was presented with a probation revocation hearing in

25

which the defense appealed on sufficiency of the evidence grounds contending that the fact that the judgement of conviction and order of probation were not introduced into evidence, nor were they judicially noticed by the trial court created an insufficiency of the evidence. The Court of Appeals had held the failure of the trial court to judicially notice these documents in accordance with Rule 201 of the Texas Rules of Criminal Evidence to be fatal.

This court reversed the court of appeals in *Cobb* because the judgment and order were contained in the appellate record on appeal, even if not filed or proved up in the trial court record, and this court held that it had never required these documents [judgment of conviction and order of probation] to be formally proved in a probation revocation hearing. See *Cobb, supra*, at page 873

The case presently before this court presents a missing evidence attack on the sufficiency of the evidence to have denied bond on appeal.

The mischief that can or will be wrought by the underlying court of appeals opinion in this case is significant. In nearly every case, it can be anticipated that the trial judge's position is that the trial judge recalls the evidence previously introduced before it in earlier hearings, and there is a tendency and desire by the trial judge to not have to have any prior testimony from different hearings repeated, however, without evidence in the record of what prior testimony from what hearing is actually being considered by the court, the Petitioner is deprived of

the notice of what evidence the court intends to consider against him that is not contained in the record of testimony and evidence adduced at the hearing. At a minimum, this Court of Criminal Appeals should preserve the process, requiring judicial notice of prior evidence and testimony admitted before the defendant, to be identified 1) so it can be objected to by the Defendant or the State; and 2) so it can be located and transcribed for purposes of appeal.

## ARGUMENT GROUNDS VI – VIII

The relatively short § 44.04 (c) Tex. Code of Crim. Procedure hearing (RR vol. 5) set forth the following facts:

Petitioner's counsel called petitioner's wife, Keisha Nixon to the stand. (RR vol. 5 p. 5 ll. 14 – 15 and p. 11 ll. 15 - 22)

The gist of Keisha Nixon's testimony both direct and cross was to this effect:

Mrs. Nixon denied that she had been assaulted by Petitioner, except for one occasion which resulted in a misdemeanor deferred adjudication in 2011, which was successfully completed by Petitioner. (RR vol. 5 p. 7 ll. 24-25 p. 8. ll. 1 – 12 and p. 12 ll. 20 - 23)

Mrs. Nixon agreed that Petitioner had assaulted her children one time for which he was placed on the felony deferred adjudication involved in the

27

adjudication proceeding and the imposition of the 5 year incarceration sentence. (RR vol. 5 p. 8 ll. 25 p. 9 ll. 1 - 2 and p. 12 ll. 24 – 25 and p. 13 ll.1 - 4)

Mrs. Nixon testified that she was impaired with alcohol and medications and her reports to the police were not accurate, and she had made up some allegations. (RR vol. 5 p. 10 ll. 2 – 25 and p. 11 ll. 1 - 5)

Mrs. Nixon testified that she and Petitioner had been together in a marriage relationship and had gone to Las Vegas together. (RR vol. p. 11 ll. 15 - 25)

Mrs. Nixon further testified that the reason there were no pictures of injuries or witnesses other than herself was because she had made up the allegations. (RR vol. 5 p. 12 ll. 12 - 19)

Mrs. Nixon asked the trial court to set a bond on appeal. (RR vol. 5 p. 6 ll. 16 - 18)

There were no exhibits offered or admitted. There was no request made by either party's counsel for the court to take judicial notice of any fact, or any document, or any prior testimony or evidence offered in any court proceeding. The trial court did not *sua sponte* take any judicial notice during the hearing on the oral request to grant bond on appeal. (RR vol. 5)

No other witnesses were called, no documents were offered or admitted. The court was not requested to take judicial notice of any document, evidence or prior testimony. (RR vol. 5)

Following a hearing on an oral Motion for Bail Pending Appeal, the trial court denied Petitioner a bond on appeal. (Supp. CR p. 8)

The trial court made findings of fact, which findings are not supported by the record, in support of the conclusion that Petitioner "is a continuing threat to the Complainant", [identified as Keisha Pope in the order denying bond] and "there is a high likelihood that the Defendant will commit another assaultive offense against the Complainant if allowed an appeal bond."

The only evidence in the record is the testimony of Keisha Nixon, the wife of Petitioner.

The standard for review for denial of a bond on appeal is abuse of discretion. *Ex parte Spaulding*, 612 S.W.2d 509, 511 (Tex. Crim. App. 1981), *Dervishi v. State*, 2-04-495-CR (Tex. App. – Fort Worth 2005).

§ 44.04(c) of the Tex. Code of Crim. Procedure contains the statutory provisions allowing for bail on appeal. § 44.04(c) provides:

> "(c) Pending the appeal from any felony conviction other than a conviction described in Subsection (b) of this section, the trial court may deny bail and commit the defendant to custody if there then exists good cause to believe that the defendant would not appear when his conviction became final or is likely to commit another offense

while on bail, permit the defendant to remain at large on the existing bail, or, if not then on bail, admit him to reasonable bail until his conviction becomes final. The court may impose reasonable conditions on bail pending the finality of his conviction. On a finding by the court on a preponderance of the evidence of a violation of a condition, the court may revoke the bail."

There was no evidence or argument offered to the court, nor any reference by the court in either the hearing or in the trial court's findings that the Petitioner would not appear when his conviction became final.

The issue in this case is confined to that portion of 44.04(c) that permits the trial court to deny bail on appeal if there is "good cause to believe" that the defendant "is likely to commit another offense while on bail."

Cases interpreting this portion of § 44.04(c) are:

The Court of Criminal Appeals addressed 44.04(c) in the case of *Putnam v. State*, 582 S.W.2d 146 (Tex. Crim. App. 1979) at a time when the statute provided for up to 15 years rather than the present day 10 year provision. The language of the statute relating to "good cause to believe" that the defendant . . . "is likely to commit another offense while on bail" has not changed since the *Putnam* case. In *Putnam,* the defendant had been released on bail following his conviction, and following this release the State filed a motion to hold Putnam without bail pending his appeal under 44.04(c). Putnam attacked the statutory language of "good cause to believe" for failure to give notice to the defendant of what he may need to

establish to remain on bail pending appeal.  The Court of Criminal Appeals in

*Putnam* cited Black's law dictionary as follows:

> "Black's Law Dictionary (Revised 4th Ed., 1968) defines 'good cause' as 'Substantial reason, one that affords a legal excuse. Legally sufficient ground or reason.'  We find that the term 'good cause' as used by the Legislature does find 'adequate interpretation in common usage and understanding.' *Sproles v. Binford, supra*.  The failure to specifically elaborate what 'good cause to believe' entails does not render this statute void for vagueness and indefiniteness.
>
> Appellant's attack on the term 'good cause to believe' is too narrowly confined.  Article 44.04(c), supra, limits this discretionary belief in that it must be grounded in evidence that the defendant 'is likely to commit another offense while on trial.'"

In the *Putnam* case, the State proved that "Appellant Did commit another

offense while on bail far exceeds the statutory requirement that the court find only

that he Is likely to commit another offense while on bail, . . ." at 151.

Many of the cases that have affirmed trial court denials of bail pending

appeal involve the taking of judicial notice of other hearings involving the

defendant seeking bail on appeal, particularly in the context of probation

revocation proceedings.  Examples of these cases are: *Ex parte Utley*, 2001 WL

301475, 05-00-01336-CR (Tex. App. – Dallas 2001 not designated for

publication). (court took judicial notice on its own motion of the contents in

appellant's court and probation files)  *Ex parte Turner*, 612 S.W.2d 611 (Tex.

Crim. App. 1981 *en banc*) Opinion by Judge Odom affirming that the taking of

31

judicial notice "of the evidence adduced at the revocation of probation hearing." was a proper approach by the court.

In *Taylor v. State*, 2014 WL 5463810, 11-14-00208 (Tex. App. – Eastland 2014 unpublished memorandum opinion) In *Taylor* the Court of Appeals found that the record showed "that Appellant has an extensive criminal history, including a failure to appear; that Appellant would probably continue to use illegal drugs while on bond; and that Appellant committed the offense of assault family violence while he was out on bond."

**The trial court findings and the record on appeal:**

Because there were no documents introduced and no judicial notice taken of any facts, documents, evidence or testimony that may or may not have occurred earlier, this Court is left with an obscure record of testimony by one reluctant and unhappy witness. There is no evidence of what probation conditions existed, when they were put in place, whether conditions such as a "no contact" provision was violated and if so when. It is apparent that there must be evidence of the likelihood of committing an "offense" and a judge's no contact order is not an "offense" under Texas criminal law. There is no support in the record before the court for linking a no contact order to a protective order. In fact, it is hard to follow what occurred, what is alleged to have occurred and what did not occur. The details of the allegations and questions are missing and not filled in with any supplemental

evidence in order to try to make sense of the situations alluded to in the testimony given by the Petitioner's wife.

Finding of Fact number 7 is particularly troubling for the following reasons: The hearing on the denial of bond on appeal was held and concluded on October 14, 2014, so how can an alleged assault report by "Complainant" have been made on October 27, 2014 and form any part of the support for the denial of bail on appeal on October 14, 2014? Further, the trial court begins the hearing referencing the probation revocation (sic) of September 29, 2014 having occurred and the oral request for an appeal bond by Counsel for Petitioner occurring within a few days of the revocation and then the hearing on October 14, 2014 denying Petitioner a bond, and his continued no bond status, making this appeal a live controversy for appellate purposes. So how is it possible that a man who the record (RR vol. 5) shows to have been continuously incarcerated since at least September 29, 2014 could have committed an assault offense against the complainant in the time frame of October 27, 2014?

Because the court's findings are not supported by the record, there is no requirement that they be addressed further and no burden on the Petitioner to bring forth evidence not in the record to attempt to dispute the accuracy or show the inaccuracy of the findings. *Bradley v. State*, 564 S.W.2d 727, 730 - 731 (Tex. Crim. App. 1978 *en banc*)

"This court cannot consider an item that is not a part of the record on appeal." *Kaman v. State*, 923 S.W.2d 129, 132 (Tex. App. – Houston [1st Dist.] 1996)

In this appeal Counsel for Petitioner made a specific request to the Clerk for the Clerk's Record and instead of complying with the request of Petitioner's counsel, the Clerk efiled or attempted to efile the reporter's record related to the entire case and underlying appeal of the revocation proceeding in appeal No. 05-14-01627-CR. The only proper Clerk's Record before this Court is the Supplemental Clerk's Record that this Court instructed the District Clerk to file. (see Appendix C)

The trial court's order denying bond on appeal (Supp. CR p. 8) to Petitioner does not correctly set out the law which requires "good cause to believe" that the defendant "is likely to commit another offense while on bail".

Applying the *Putnam*, *supra*, explanation of proof of "good cause to believe" which must be "grounded in evidence that the defendant is likely to commit another offense while on bail" which sets out the legal parameters for whether the trial court abused its discretion in this appeal, the trial court has abused its discretion by going outside the record and not taking its findings and conclusions and ruling from the facts and evidence produced at the hearing, which in this case fail to meet the level and nature of proof required to deny bond.

34

## REASONS FOR GRANTING THIS PETITION

Rule 66.3 Rules of Appellate Procedure provide the following as reasons to grant a petition for discretionary review. Petitioner states that he believes that the following two basis are particularly important under the facts and decision of the Court of Appeals in this case:

(b) whether a court of appeals has decided an important question of state or federal law that has not been, but should be, settled by the Court of Criminal appeals;

(f) whether a court of appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals' power of supervision.

## PRAYER FOR RELIEF

Petitioner prays that the Court of Criminal Appeals reverse the trial court's order denying bond on appeal, reverse the Fifth Court of Appeals, and in light of the problems at trial court level that the court of appeals set a reasonable bond or alternatively, remand the cause to the trial court with instructions to set a reasonable bond on appeal for Petitioner.

Respectfully submitted,

DYER & LIBBY

35

/s/ James H. Dyer

_____

James H. Dyer
Bar Card No. 06315700

/s/ Joseph D. Libby

_____

Joseph D. Libby
Bar Card No. 12318500

3501 Prairie St., Suite 100
Houston, Texas 77002
(713) 222-7757  phone
(713) 222-7758  fax
Email: josephlibbyattorney@yahoo.com

## CERTIFICATE OF SERVICE

We hereby certify that a copy of the above and foregoing Petition for Discretionary Review has been served on September 3, 2015 via fax to:

Susan Hawk
District Attorney
Dallas County, Texas

/s/ James H. Dyer

_____

James H. Dyer

/s/ Joseph D. Libby

_____

Joseph D. Libby

## CERTIFICATE OF COMPLIANCE

We hereby certify that this computer-generated document contains 5142 words (not including the caption, identity of Judge, Parties and Counsel, Table of Contents, Statement of Oral Argument, Statement of the Issues Presented, the Index of Authorities, Statement of the Case and Procedural History, signature, certification, and certification of compliance and the appendix) and that we rely upon the word count generator of Word 13 in making this representation to the court.

/s/ James H. Dyer

_____

James H. Dyer

/s/ Joseph D. Libby

_____

Joseph D. Libby

# APPENDIX

A.      Opinion of the Fifth Court of Appeals

B.      Trial court order denying bond on appeal

C.      Order of Justice Ada Brown, Fifth Court of Appeals

D.      Docket sheet from website of Fifth Court of Appeals

E.      Letter of Court Reporter requesting that all five volumes be filed in this appeal, May 6, 2015

F.      Reporter's Record Volume 5

G.      The State's Brief in the Court of Appeals

H.      The Supplemental Clerk's Record

I.      Petitioner's designation of reporter's record

J.      Petitioner's designation of clerk's record

AFFIRM; and Opinion Filed August 4, 2015.



In The

**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

No. 05-15-00485-CR

_____

**CLEVELAND NIXON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the Criminal District Court No. 6
Dallas County, Texas
Trial Court Cause No. F11-21243-X

# MEMORANDUM OPINION

Before Justices Bridges, Lang, and Schenck
Opinion by Justice Schenck

Cleveland Nixon was convicted, following the adjudication of his guilt, of injury to a child and sentenced to five years' imprisonment.[1] Appellant filed a motion for bail pending appeal, which was denied, and this appeal followed. We affirm the trial court's order.

## BACKGROUND

On June 27, 2012, appellant entered a negotiated guilty to the third-degree felony offense of injury to a child. The trial court followed the plea agreement, deferred adjudicating appellant's guilt, placed him on five years' community supervision, and assessed a $1,000 fine. On March 26, 2014, the State filed a motion to proceed to proceed with adjudication of guilt, alleging

---

[1] The appeal from the conviction is pending before this Court, docketed as cause no. 05-14-01627-CR, *Cleveland Nixon v. The State of Texas*.

appellant violated condition (a) of his supervision by committing the offense of assault on a family member. The trial court declined to adjudicate appellant guilty at that time, but continued him on community supervision and modified the conditions of his supervision. One condition of supervision was that appellant have no contact with Keisha Pope Nixon,[2] the complaining witness on the family violence assault. On September 29, 2014, the State filed an amended motion to adjudicate guilt, again alleging the March 2014 family violence offense, as well as a new family violence offense and that appellant did not refrain from contacting Pope Nixon. Following a contested hearing on the motion to adjudicate, the trial court found the allegations true, adjudicated appellant guilty, and sentenced him to five years' imprisonment.

On September 25, 2014, four days before the adjudication hearing, appellant sought release on bail pending determination of the motion to adjudicate. The trial court did not release appellant on bail at that time. After the trial court adjudicated appellant's guilt and sentenced him to prison on September 29, 2014, appellant orally requested an appeal bond. A hearing was conducted on October 14, 2014. At the conclusion of the hearing, the trial court orally denied appellant's motion for bond pending appeal, but no written order was entered at that time. On January 2, 2015, appellant filed a written motion for bond pending appeal. No new hearing was conducted on the motion. The trial court entered a written order denying to motion on April 2, 2015.[3]

---

[2] Pope Nixon and appellant were married after the conditions of appellant's supervision were modified to include the no-contact provision.

[3] In the interim, appellant filed a petition for writ of mandamus complaining the trial court had not issued a written order on the January 2, 2015 motion, thereby preventing appellant from appealing the trial court's ruling. This Court conditionally granted mandamus relief on March 25, 2015, and ordered the trial court to sign a written order ruling on the motion for bail pending appeal. *In re Nixon*, No. 05-15-00263-CV, 2015 WL 1346137 (Tex. App.—Dallas Mar. 25, 2015, orig. proceeding) (mem. op.).

## APPLICABLE LAW

Article 44.04(c) of the Texas Code of Criminal Procedure provides the procedure for bail pending appeal. It provides that pending appeal from a felony conviction other than one in which the sentence imposed is ten years or more or involves a conviction for an offense listed in article 42.12, section 3g(a)(1) of the Texas Code of Criminal Procedure,[4] "the trial court may deny bail and commit the defendant to custody if there then exists good cause to believe the defendant . . . is likely to commit another offense while on bail, permit the defendant to remain at large on the existing bail, or, if not then on bail, admit him to reasonable bail until his conviction becomes final." TEX. CODE CRIM. P. ANN. art. 44.04(c) (West 2006).

A defendant who has been convicted no longer enjoys a presumption of innocence. *See Coble v. State*, 871 S.W.2d 192, 207 (Tex. Crim. App. 1993); *Coutta v. State*, 385 S.W.3d 641, 652 (Tex. App.—El Paso 2012, no pet.). The only interest that is furthered by a defendant's right to remain free during appeal is the interest in protecting the defendant from an erroneous judgment. *Ex parte Anderer*, 61 S.W.3d 398, 406 (Tex. Crim. App. 2001). That interest must be balanced against the interest of society in enforcing the penal laws. *Id.*

We review the trial court's decision to deny bail pending appeal under an abuse of discretion standard. *See Ex parte Turner*, 612 S.W.2d 611, 612 (Tex. Crim. App. 1981). In conducting the review, we review the evidence in the light most favorable to the trial court's ruling, and we must defer to the trial court's findings of fact that are supported by the record. *See Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). We give "almost total deference" to the trial court's findings of fact, especially where they turn on the credibility

---

[4] Because appellant was convicted of the third-degree felony offense of injury to a child, his case does not fall under subsection (b). *See* TEX. PENAL CODE ANN. § 22.04(a)(3) (West Supp. 2014); TEX. CODE CRIM. P. ANN. art. 42.12, § 3g(a)(1)(I) (West Supp. 2014).

and demeanor of witnesses. *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004). We review the trial court's conclusions of law de novo. *See Ex parte Brown*, 158 S.W.3d 449, 453 (Tex. Crim. App. 2005) (per curiam); *Ex parte Peterson*, 117 S.W.3d at 819.

## CONSIDERATION OF ENTIRE RECORD

We first address appellant's third issue in which he asserts the trial court was only permitted to consider the testimony presented at the October 14, 2014 bond hearing in ruling on the motion for bail. Appellant states that nothing in the record shows the evidence from the prior hearings was either admitted into evidence or that the trial court took judicial notice of the evidence presented in those proceedings. The State responds that the trial court was not restricted to the evidence presented at the October 14 hearing, and the record shows the trial court did take into consideration the evidence presented at the previous hearings. We agree with the State.

At the beginning of the October 14, 2014 hearing, the trial court specifically referenced the previous proceedings and asked appellant's counsel if he wanted "to put a little more testimony on the record concerning the appeal bond." The trial court's order references testimony and argument at the hearing as well as testimony presented at the previous hearings. Pope Nixon's testimony at the October 14, 2014 hearing also refers explicitly back to testimony she gave at the adjudication hearing.

The trial court is not required to use magic words to establish that it has considered the evidence previously presented to it. The trial court sat as fact finder at the September 25, 2014 pre-adjudication bond hearing and the September 29, 2014 adjudication hearing, and was clearly considering the evidence presented at the hearings in making its ruling on the motion for an appeal bond. *See In the Interest of J.J.C.*, 302 S.W.3d 436, 446 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (trial court presumed to "judicially know" what has previously taken place in case tried before it.). We overrule appellant's third issue.

–4–

## SUFFICIENCY OF EVIDENCE TO SUPPORT RULING

In his first, second, and fourth issues, appellant contends the trial court abused its discretion in denying appellant's motion for an appeal bond because the record does not support the trial court's decision. The State responds that the record is sufficient to support the trial court's ruling.

At the September 25, 2014 hearing, Pope Nixon testified that she and appellant "eloped" to Las Vegas and got married there on August 9, 2014. Pope Nixon testified that she was the complaining witness on the March 2014 assault; she also testified about a "scraped knee incident" in Las Vegas. Pope Nixon testified that she signed an affidavit of non-prosecution regarding the March 2014 alleged assault. She testified she "was off" her medication and had been drinking at the time. She testified that she did not "make up" the incidents she reported to the police, but the events "did not happen as they are stated" in the police reports. As regards the March 2014 incident, which involved an allegation that appellant choked Pope Nixon, she testified that appellant was "defending himself" and "holding [her] off [of] him." She further testified that she and appellant had contact with each other despite the no contact condition of community supervision. She testified that she and appellant had been "residing together" since their marriage, and asked that the no contact condition be removed.

Appellant testified at the September 25, 2014 hearing that he received deferred adjudication for a misdemeanor assault involving Pope Nixon and the injury to a child offense involving Pope Nixon's son. He nevertheless testified that he never did anything to Pope Nixon or her son. Appellant testified the incident involving Pope Nixon's son involved he and the son "falling to the floor." Appellant testified he never "put his hands on" Pope Nixon. He further testified he married Pope Nixon because she told him she would "tell the truth" that he did not choke her, and she would drop the charges against him.

At the September 29, 2014 adjudication hearing, Pope Nixon testified appellant had received one-year's deferred adjudication community supervision for assaults against herself and one of her children, and five years' deferred adjudication community supervision for an assault on another of her children.[5] She testified that appellant had pushed her and there was some "shoving" between appellant and her sons. In March 2014, Pope Nixon called the police and reported appellant had strangled her. She also reported to the police that her arm was in a sling because of an "incident" involving her and appellant in Rockwall. Pope Nixon also went to the emergency room in Grand Prairie because of a knee injury, and hospital personnel contacted the police based on information Pope Nixon had given that she and her husband "had gotten into it." Pope Nixon testified that, while she did not lie about the incidents she reported to the police, they did not occur as set out in the police reports. She claimed to have been drinking and may have taken pain medication, and did not remember exactly what she told the police. Pope Nixon further testified that appellant was "around [her] consistently."

On October 14, 2014, the trial court conducted a hearing on appellant's oral motion for an appeal bond. At the hearing on appellant's motion for bond, Pope Nixon testified that appellant did not hit her on either of the two occasions alleged in the amended motion to adjudicate guilt. Pope Nixon testified again that she was intoxicated and/or on medication and that she falsely reported that appellant had assaulted her. Pope Nixon did testify that appellant had hit her on one occasion and hit her son on one occasion, and she continued to have contact with appellant while he was on community supervision.

The complete record shows that on June 27, 2012, appellant pleaded guilty to injury to a child. The trial court deferred adjudication of appellant's guilt, placed him on five years' community supervision, and assessed a $1,000 fine. The court placed a no-contact condition on

---

[5] This assault was the basis of the injury to a child charge.

appellant following a hearing on a motion to adjudicate guilt alleging a felony family violence assault on Pope Nixon. The record includes testimony that appellant had continued contact with Pope Nixon following the imposition of that condition, including the wedding trip to Las Vegas. There was also testimony of three reported assaults by appellant on Pope Nixon during the time he was on community supervision. Pope Nixon gave somewhat conflicting testimony about the nature of those assaults and whether they occurred, referencing the consumption of alcohol and/or medication, and a lapsed memory as to what she actually told responding law enforcement officers. Pope Nixon also testified that she and appellant had continuous contact each other.

The trial court, as fact finder, was the sole judge of the credibility of the witnesses. As such, the trial court was free to disbelieve the testimony of any witness and to draw reasonable inferences from the record of assaults and numerous police and medical reports. Viewing the record as a whole and with proper deference to the trial court's role as fact finder, we conclude that the evidence supports the trial court's findings of fact. We further conclude the trial court did not abuse its discretion in denying bail. We overrule appellant's first, second, and fourth issues.

We affirm the trial court's order denying appellant's motion for bail pending appeal.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

150485F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CLEVELAND NIXON, Appellant

No. 05-15-00485-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 6, Dallas County, Texas
Trial Court Cause No. F11-21243-X.
Opinion delivered by Justice Schenck,
Justices Bridges and Lang participating.

Based on the Court's opinion of this date, we **AFFIRM** the trial court's order denying appellant's motion for bail pending appeal.

Judgment entered this 4th day of August, 2015.

Cause No. F11-21243-X

FILED

2015 APR -2 PM 12: 52

FELICIA PITRE
DISTRICT CLERK
DALLAS TEXAS

_____DEPUTY

| STATE OF TEXAS | § | IN THE CRIMINAL |
| VS. | § | DISTRICT COURT NO. 6 |
| CLEVELAND NIXON | § | DALLAS COUNTY, TEXAS |

## ORDER ON DEFENDANT'S MOTION
## FOR BOND PENDING APPEAL

The Court after taking testimony and hearing argument on the Defendant's request for bond pending appeal hereby makes the following findings:

1.      The Court finds that the Defendant violated the no contact order in place and had prohibited contact with the complainant, Keisha Pope while on probation.

2.      At the hearings on the motion to revoke, which were conducted in September and October of 2014, the Court heard testimony that the Defendant and the complainant had a history of violent confrontations. For example, during their relationship, the Defendant assaulted both of the complainant's sons. One son was slammed against the wall and the other son was punched in the head and face, while trying to help protect their mother from being assaulted by Defendant.

3.      In March, 2014, the Complainant reported that the Defendant assaulted her by strangulation and she injured her arm. During this timeframe, the Complainant also reportedly fell out of a car the Defendant was driving.

4.      In July of 2014, the Defendant had the Complainant arrested after coming to his house uninvited. The Defendant has asked the Complainant to stay away from him.

5.      On 8/14/14, the Complainant went to the emergency room for a knee injury she suffered when the Defendant grabbed her by the arm and threw her down during an argument with the Defendant. The Defendant and the complainant were arguing over his affair with a co-worker.

6.      On August 27, 2014, the Complainant called the Grand Prairie police department and reported that the Defendant choked her, beat her, and sat on her chest.

7.      On October 27, 2014, another assault report was made by the Complainant.

8.      The court finds that the Defendant is a continuing threat to the Complainant and that there is a high likelihood that the Defendant will commit another assaultive offense

against the Complainant if allowed an appeal bond. *See* Tex. Code Crim. Proc. Ann. art. 44.04(c). Accordingly, the court denies the Defendant's request for bond pending appeal.

**IT IS THEREFORE ORDERED** that the Defendant's request for bond pending appeal is hereby DENIED.

**IT IS FURTHER ORDERED** that clerk of the Court shall send a copy of this order to Applicant's attorney, Joseph Libby, Dyer and Libby, 1305 Prairie Street, Suite100, Houston, Texas 77002 and to counsel for the State. The clerk of the court shall also send a copy of this order in a supplemental transcript to the Fifth Court of Appeals at Dallas.

**SIGNED** this 2nd day of April, 2015.

JUDGE JEANINE HOWARD
CRIMINAL DISTRICT COURT NO. 6
DALLAS COUNTY, TEXAS

Order entered May 7, 2015



In The
# Court of Appeals
## Fifth District of Texas at Dallas

No. 05-15-00485-CR

CLEVELAND NIXON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 6
Dallas County, Texas
Trial Court Cause No. F11-21243-X

## ORDER

Appellant is appealing the trial court's order April 2, 2015 order denying his request for a bond pending appeal. This is an accelerated criminal appeal under Texas Rule of Appellate Procedure 31.

We note that the reporter's record from the October 14, 2014 hearing on appellant's motion for an appeal bond was filed with the record for the appeal of appellant's underlying conviction, docketed as cause no. 05-14-01627-CR. Accordingly, we **DIRECT** the Clerk to transfer the reporter's record of the October 14, 2014 hearing, designated as Volume 5 of 5, from cause no. 05-14-01627-CR into the above appeal.

We received a clerk's record in this appeal on April 29, 2015. However, the clerk's record does not contain the documents related to appellant's motion for an appeal bond.

Specifically, it does not contain appellant's , appellant's January 2, 2015 "motion for reasonable bail pending appeal," the trial court's April 2, 2015 order denying appellant's motion for an release on an appeal bond, or the trial court's certification of appellant's right to appeal in this proceeding.

Accordingly, we **ORDER** the trial court to prepare a certification of appellant's right to appeal, for inclusion in the clerk's record, within **TEN DAYS** of the date of this order. *See* TEX. R. APP. P. 25.2(a), (d); *Cortez v. State*, 420 S.W.3d 803 (Tex. Crim. App. 2013).

We **ORDER** the Dallas County District Clerk to file, within **MAY 29, 2015** a supplemental clerk's record containing all of the documents related to appellant's motion for bond on appeal, including the motion, the trial court's order, and the trial court's certification of appellant's right to appeal.

Appellant's brief is due by **JUNE 17, 2015**. The State's brief is due by **JULY 6, 2015**. If any party does not file its brief by the date specified, the appeal will be submitted without that party's brief. *See* TEX. R. APP. P. 31.1.

The appeal will be submitted, without argument, on **AUGUST 3, 2015** to a panel consisting of Justices Bridges, Lang, and Schenck. *See* TEX. R. APP. P. 31.2

We **DIRECT** the Clerk to send copies of this order to the Honorable Jeanine Howard, Presiding Judge, Criminal District Court No. 6; Felicia Pitre, Dallas County District Clerk; and to counsel for all parties.

/s/ ADA BROWN
   JUSTICE

# CASE:

## 05-15-00485-CR

**DATE FILED:**

04/14/2015

**CASE TYPE:**

APPEAL FROM AN ORDER DENYING BAIL

**STYLE:**

CLEVELAND NIXON

**V.:**

THE STATE OF TEXAS

**ORIG PROC:**

NO

**TRANSFER FROM:**

**TRANSFER IN:**

**TRANSFER CASE:**

**TRANSFER TO:**

**TRANSFER OUT:**

**PUB SERVICE:**

# APPELLATE BRIEFS

| DATE | EVENT TYPE | DESCRIPTION | DOCUMENT | |
|------|-----------|-------------|----------|---|
| 07/06/2015 | BRIEF FILED - ORAL ARGUMENT NOT REQUESTED | STATE | STATE'S BRIEF <br> NOTICE | [ PDF/175 KB ] <br> [ PDF/71 KB ] |
| 06/16/2015 | BRIEF FILED - ORAL ARGUMENT NOT REQUESTED | APPELLANT | APPELLANT'S BRIEF | [ PDF/96 KB ] |

# CASE EVENTS

| DATE | EVENT TYPE | DESCRIPTION | DISPOSITION | DOCUMENT |
|---|---|---|---|---|
| 08/04/2015 | MEMORANDUM OPINION ISSUED | | AFFIRMED | MEMORANDUM OPINION [ PDF/51 KB ] <br><br> NOTICE [ PDF/85 KB ] |
| 08/04/2015 | RETENTION TIME CASE FILE WILL BE RETAINED | | DESTROY | |
| 08/03/2015 | SUBMITTED | | | |
| 07/06/2015 | CASE READY TO BE SET | | | |
| 07/06/2015 | BRIEF FILED - ORAL ARGUMENT NOT REQUESTED | STATE | | STATE'S BRIEF [ PDF/175 KB ] <br><br> NOTICE [ PDF/71 KB ] |
| 07/06/2015 | STATE BRIEF DUE | | | |
| 06/17/2015 | APPELLANTS BRIEF DUE | | | |
| 06/16/2015 | BRIEF FILED - ORAL ARGUMENT NOT REQUESTED | APPELLANT | | APPELLANT'S BRIEF [ PDF/96 KB ] |
| 06/01/2015 | RECORD DUE | | | |
| 05/29/2015 | SUPPLEMENTAL CLERKS RECORD DUE | | | |
| 05/15/2015 | ELECTRONIC SUPPLEMENTAL CLERKS RECORD FILED | | | NOTICE [ PDF/93 KB ] |
| 05/07/2015 | REPORTERS RECORD FILED | | | |
| 05/07/2015 | ORDER ENTERED | ACTION BY COURT ON OWN MOTION | OTHERWISE DISPOSED | ORDER ON ACCELERATED APPEAL [ PDF/128 KB ] <br><br> NOTICE [ PDF/85 KB ] |
| 05/06/2015 | LETTER FILED | COURT REPORTER | | COURT REPORTER STATUS LETTER [ PDF/211 KB ] |
| 04/29/2015 | ELECTRONIC CLERKS RECORD FILED | | | NOTICE [ PDF/93 KB ] |
| 04/14/2015 | DOCKETING | CRIMINAL | | NOA/DOCKETING STATEMENT [ PDF/1.6 |

| | | | | | |
|---|---|---|---|---|---|
| | STATEMENT FILED | | | | MB ] |
| 04/14/2015 | NOTICE OF APPEAL FILED IN COURT OF APPEALS | | | NOA/DOCKETING STATEMENT<br><br>NOTICE | [ PDF/1.6 MB ]<br><br>[ PDF/9 KB ] |
| 04/13/2015 | NOTICE OF APPEAL FILED IN TRIAL COURT | | | NOA | [ PDF/128 KB ] |
| 04/02/2015 | JUDGMENT SIGNED BY TRIAL COURT JUDGE | | | | |

## CALENDARS

| SET DATE | CALENDAR TYPE | REASON SET |
|---|---|---|
| 08/04/2040 | RETENTION | DATE CRIMINAL CASE WILL BE DESTROYED (25 YEARS AFTER MANDATE) |
| 10/14/2015 | STATUS | MANDATE TO ISSUE |

## PARTIES

| PARTY | PARTYTYPE | REPRESENTATIVE |
|---|---|---|
| THE STATE OF TEXAS | CRIMINAL - STATE OF TEXAS | SUSAN HAWK<br>MICHAEL J. SANDLIN |
| NIXON, CLEVELAND | CRIMINAL - APPELLANT | JOSEPH LIBBY<br>JAMES DYER |

## TRIAL COURT INFORMATION

**COURT:**

CRIMINAL DISTRICT COURT NO. 6

**COUNTY:**

DALLAS

**COURT JUDGE:**

HONORABLE JEANINE HOWARD

**COURT CASE:**

F-1121243-X

**COURT REPORTER:**

JAN CHERIE WILLIAMS

PUNISHMENT:



HON. JEANINE HOWARD
DISTRICT JUDGE
CRIMINAL DISTRICT COURT NO. 6

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
5/6/2015 3:26:38 PM
LISA MATZ
Clerk

May 6, 2015

Tami Swanson, Clerk
Fifth District Court of Appeals
600 Commerce Street, Suite 200
Dallas, Texas 75202

RE:  Case No. 05-15-00485-CR
     Cleveland Nixon v The State of Texas
     Trial Court Cause No. F11-21243-X

Please be advised that for the above-referenced appeal there was no official record taken on the date of April 2, 2015.

Per our conversation on 05/04/15 when I inquired about the appeal, and now a second conversation with Claudia today, I am requesting that all Reporter's Records, Volumes 1 – 5, for Trial Court Cause No. F11-21243-X, which was accepted by the Fifth District Court on 02/09/2015 under 05-14-01627-CR, be transferred to this most current appeal 05-15-00485-CR. This will ensure that every official reporter's record to date for the appellant in the trial court cause number referenced above is available for both appeals.

Thank you,

Cherie Williams
Official Court Reporter
Criminal District Court No. 6
972-739-3912

Jerry Barker, Court Coordinator    •    Cherie Williams, Court Reporter

Frank Crowley Criminal Courts Building • 133 N. Riverfront Blvd., LB 11 • 6th Floor • Dallas, Texas 75207 • 972-739-3910

CAUSE NO. F11-21243-x

THE STATE OF TEXAS          *          IN CRIMINAL DISTRICT

                            *

VS.                         *          COURT NUAMBER 6

                            *

CLEVELAND NIXON             *          DALLAS COUNTY, TEXAS

* * * * * *

REPORTER'S RECORD

14 OCTOBER 2014

VOLUME 5

* * * * * *

BE IT REMEMBERED that on the 14th day of October, 2014, the above-styled and numbered cause came before the Honorable Jeanine Howard, Judge presiding for Criminal District Court Number 6, and the following proceedings were had:

A P P E A R A N C E S

MR. JOSH HEALY — SBOT NO. 242026288
ASSISTANT DISTRICT ATTORNEY
133 N. Riverfront Blvd.
Dallas, Texas 76180

                              FOR THE STATE;

MR. CHARLIE HUMPHREYS
HUMPHREYS & PETERSON LAW FIRM
5502 Broadway Blvd.
Garland, Texas  75043
972 303-4529

                              FOR THE DEFENDANT;

CHRONOLOGICAL INDEX
14 OCTOBER 2014
VOLUME 5

| DEFENDANT'S WITNESSES | Direct | Cross | Redirect | Recross | Vol. |
|---|---|---|---|---|---|
| KEISHA NIXON | 5 | 7 | 12 | 13 | 5 |

| | PAGE NUMBER | VOLUME NUMBER |
|---|---|---|
| Proceedings........................................... | 3 | 5 |
| State rests........................................... | 13 | 5 |
| Defense Rests......................................... | 13 | 5 |
| Both sides close...................................... | 13 | 5 |
| Closing Arguments by Mr. Healy....................... | 14 | 5 |
| Closing Arguments by MR. HUMPHREYS................... | 15 | 5 |
| Court's Ruling....................................... | 16 | 5 |
| Court reporter certification........................ | 17 | 5 |

Kelly Simmons, CSR   K.simmonscsr@yahoo.com   214-906-4715

PROCEEDINGS

THE COURT: This is F11-21243-X styled State of Texas versus Cleveland Nixon. That is your true name, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is it spelled Cleveland or just C-l-e-v --

THE DEFENDANT: C-l-e-v-e-l-a-n-d.

MR. HUMPHREYS: With the E.

THE COURT: With the E. Okay. Back on September 29th, 2004, we had a contested revocation hearing, and at that time you had plead true -- plead not true, and after hearing the additional testimony on that date, combined with testimony from September 25th, the Court found you had violated your probation, granted the state's motion, revoked your probation, found you guilty and charged of injury to a child and set your punishment at five years confinement in the penitentiary.

Your attorney later that day, or two days after that, I should have that on another docket sheet documented, I'm not asking you to get it right now, but you approached me about an appeal bond, and I denied that request based on the testimony I had heard, you know, during the revocation hearing and pursuant to Article 44.04(C) of the Code of Criminal Procedure.

Now, Mr. Humphreys, today you want to put a little more testimony on the record concerning the appeal bond?

MR. HUMPHREYS: Yes, please, Judge.

THE COURT: All right. Both sides ready to proceed?

MR. HEALY: Yes, Your Honor.

MR. HUMPHREYS: Yes, Your Honor.

THE COURT: Call your first witness.

MR. HEALY: I will call Keisha Nixon.

[Witness sworn by the Court]

KEISHA NIXON,

A witness called by the State, after being sworn by the Court to tell the truth, the whole truth, and nothing but the truth, testified on her oath as follows:

DIRECT EXAMINATION

BY MR. HUMPHREYS:

Q.    Would you state your name, ma'am?

A.    Keisha Nixon.

Q.    You're one in the same person that had testified previously on Cleveland Nixon's case; is that right?

A.    Correct.

Q.    You understand we're here just for a very limited purpose today, and that's regarding asking the Honorable Judge Howard to set an appeal bond for Cleveland. Do you understand that?

A.    Yes. Correct.

Q.    Now, Keisha, there has been two allegations, both A., under the violation of probation that Cleveland had

assaulted you back in March of 2014, that was March 17th of 2014, for assault family violence impeding, a third degree felony, which is still a pending case in this court, right?

A.    Yes.

Q.    And also an incident on August 27, 2014, where you were at the hospital in Grand Prairie, and there were allegations about some assault which has not been filed, but that also involved you, correct?

A.    Correct.

Q.    Okay.  Those two alleged assaults, you have said previously that Cleveland did not assault you; is that right?

A.    Correct.

Q.    In fact, those police reports were false; is that right?

A.    Correct.

Q.    And you are asking the honorable Judge to set a reasonable appeal bond in this case; is that right?

A.    Yes.

Q.    Now, previously, you were kind of wavering, like, well, I was drinking Moscato, a wine, or I was under medication. You kind of waivered about the reports, and I want to be clear. Cleveland did not assault you on those two occasions.  That's what you told me; is that right?

A.    Yes, I did.

Q.    Is that correct?

A.     That is correct.

Q.     So they were both false reports, and you don't anticipate any future assaults from him?

A.     No, I do not.

MR. HUMPHREYS:  No more questions, Your Honor.

CROSS-EXAMINATION

BY MR. HEALY:

Q.     How many times has he hit you in the past, up to this date?  Remember, you are under oath.

A.     During the 2011 incident?

Q.     Listen to my question again.  Okay?

A.     Uh-huh.

Q.     Since you have known him, up until today, how many times has this man laid his hands on you?

A.     When he was off his meds in 2011.

Q.     Did I ask anything about meds?

MR. HUMPHREYS:  Objection.  The honorable prosecutor is cutting her off.  He is not allowing her to elaborate and explain her answer.  I am asking for a fair opportunity to answer the question asked without being interrupted.

THE COURT:  Sustained.  Try to answer the question he is asking.

MR. HEALY:  Let me try again.  Regardless of any reason whatsoever, answer my question, please.  How many times

between -- since you met him up until now, has he laid his hands on you?

A.    Once.

Q.    Just one time?

A.    Uh-huh.

Q.    And what did he do?

A.    I really don't recall at this time.

Q.    You just remember that he hit you once?

A.    It was three years ago.

Q.    Do you remember giving, two weeks ago or last week, how many times he had laid his hands on you?

A.    No.

Q.    You don't?

A.    Huh-uh.

Q.    Do you remember testifying about him laying his hands on your children?

A.    You were at that hearing so, yes.

Q.    Okay.  I will try again.  Do you remember you testifying last week or two weeks ago about him laying his hands on your children?

A.    I remember that, but the question was you asked me how many times he had hit me.

Q.    Now I'm moving on to your children.

A.    Uh-huh.

Q.    So he did, in fact, lay his hands on your children

as well?

A.    LIke I answered two weeks ago, yes.

Q.    Okay.

THE COURT:  Ma'am, the little side comments aren't necessary.  Don't have an attitude.  Just answer the question.

THE WITNESS:  Yes, Your Honor.

Q.    (By Mr. Healy) Is this, like, a joke to you here?

A.    I'm not laughing.  I don't find any of this amusing.  I take it very seriously.

Q.    So what you're going to give us today is that he has hit you once, and he has hit your children, correct?

A.    Once.

Q.    Once each?

A.    Uh-huh.

Q.    Is that a yes?

A.    Yes, it is.

Q.    And you want this judge to believe that all of those other times you called the police and got roughed up, it wasn't him, it was just you making up these stories?

MR. HUMPHREYS:  Objection, Your Honor.  When he says, "all those times," we would ask that he be more specific in the question.  We think that's too general.

Q.    (By Mr. Healy) Judge, she said only once.  Any other time she called the police she's obviously now saying she made it all up.

THE COURT: Ask it that way. Any other time.

Q. (By Mr. Healey) Any other time the police were called out to the scene, to the hospital, to your house, anywhere, you made those stories up; is that correct?

A. Yes.

Q. Why did you make those stories up, again?

A. Stressed.

Q. Stressed about what?

A. Stressed.

Q. You made those stories up when you told the doctor he hit you?

A. What time are you referring to?

Q. The time you went to the hospital, and you interviewed with the doctor and told the doctor he hit you.

A. When I tripped?

Q. Yes, when you say you tripped.

A. When I was drunk?

Q. Yes.

A. Yes, I was intoxicated.

Q. And so, like we talked about two weeks ago, the intoxication made you blame your husband at that moment?

A. And meds.

Q. And meds? What meds makes you blame your husband for hitting you?

A. What meds was I taking?

Q.    Yes, ma'am.

A.    Prozac.

Q.    So Prozac makes you, when you get hit or hurt yourself, blame your husband?

A.    Apparently, it did.

MR. HEALY:  May T have one minute, Your Honor?

THE COURT:  Yes.

[Brief pause in the proceedings]

Q.    (By Mr. Healey) Finally, we have talked about this before, you testified earlier that the defendant and you were together all the time, in violation of the Court's stay-away order; is that correct?

A.    Well, I rarely see him because he works so much so...

Q.    You went and got married in Vegas, right?

A.    Uh-huh.

Q.    So that's, obviously, in violation of the stay-away order.

A.    I'm not the person that's on probation, so I don't know what his conditions are.  I don't have them in front of me, so I can only answer the question as to being present during my marriage.

Q.    So he was around you during your marriage.  You stayed in the same house, right?

A.    Recently.

Q.    And you went to Vegas, right?

A.    Correct.

Q.    And I'm assuming you talked all the time, right, or at least when he wasn't working?

A.    At times.

Q.    Thank you, ma'am.

MR. HEALY:  That's all I have, Judge.

MR. HUMPHREYS:  Brief redirect, Your Honor?

THE COURT:  You may.

### RE-DIRECT EXAMINATION

BY MR. HUMPHREYS:

Q.    The reason there is absolutely no pictures anywhere of any of the injuries from these alleged assaults is because they never happened, right?

A.    Correct.

Q.    And the reason that there is no other witness, besides you, to any of these alleged assaults is because you were the only one there, and they never happened?

A.    That is accurate.

Q.    So your testimony is Cleveland hit you once three years ago, and that's why he had the misdemeanor deferred probation that he completed, right?

A.    That is correct.

Q.    And he hit Omar, and that's why he was on this probation here, injury to a child, that the honorable Judge

sentenced him to five years in prison?

A. Yes.

Q. But since then, there has been no assaults?

A. No, there has not.

Q. You don't think there is any likelihood of him committing any new offenses because there hasn't been any new offenses in three years, right?

A. No, I do not.

Q. Do not think there will be anymore offenses?

A. No, sir.

MR. HUMPHREYS: No more questions, Your Honor. We rest.

MR. HEALY: I do have one follow-up, Your Honor.

RECROSS-EXAMINATION

BY MR. HEALY:

Q. So are you guys getting a divorce now?

MR. HUMPHREYS: Not relevant, Your Honor, for this hearing.

MR. HEALY: It goes to the stay-away order, Your Honor.

THE COURT: Overruled.

Q. (By Mr. Healy) You can answer.

A. So --

Q. Are you getting a divorce now, or are you planning on staying together?

A.   So we have to get a divorce?

Q.   I'm asking, are you getting a divorce, or do you plan on staying together?

A.   I don't know.

Q.   Do you plan on talking to him still?

A.   That all depends on the conditions of his bond.

MR. HEALY:   Okay.  That's all I have, Your Honor.

MR. HUMPHREYS:   Nothing more.  We rest.

THE COURT:   State rests?

MR. HEALY:   Yes, Your Honor.

THE COURT:   Close?

MR. HUMPHREYS:   Close.

May she be excused?

THE COURT:   Yes.

THE WITNESS:   Thank you, Your Honor.

THE COURT:   You may step down, and you may be excused.

Does either side want to make any argument?

CLOSING ARGUMENTS

BY MR. HEALY:

MR. HEALY:   Judge, we just obviously, based on the testimony you have now heard, I think three times she's testified, we believe that he would be a continuing threat to her, based on the repeated instances of assault.

And Mr. Humphreys brings up there's no pictures, but it

seems every time she's injured it's blamed on the defendant, then she recants. That's common in the family violence world, as you know, as well as the repeated stay-away order violation that neither one of them seems to be adhereing to.

We ask that the appeal bond be denied.

THE COURT: Mr. Humphreys?

CLOSING ARGUMENTS

BY MR. HUMPHREYS:

MR. HUMPHREYS: May it please the Court. Your Honor, you know, in our line of work down here, Judge, we make assumptions. We assume certain things happen, we think this probably happened and that probably happened. None of us were there, and we don't know, and all we can do is go on the evidence that's in front of us, and the evidence in front of us is Keisha Nixon telling you that there were false reports to the police officers, that there were no assaults.

There are no pictures whatsoever. There is no secondary witness to any of these, and to remind the Court from the previous testimony, we have her on tape recording saying, and pardon my language, "I own you, mother fucker." Okay.

Clearly, this young lady is using the judicial system to keep him in line. She forced him to go to Vegas to marry him, and the following Monday came to my office and signed an affidavit of nonprosecution because he did what she wanted him to do.

Whenever he doesn't do what she wants, she calls the police, and she uses your court and the legal system as a way to keep this man in line, thereby owning him.  We're only asking for a reasonable bond.  We don't think there is a likelihood of future assault.  We're asking for a reasonable bond on the appeal of five or ten thousand, Your Honor.

COURT'S RULING

THE COURT:  All right.  I'm going to deny your motion on the bond.  Again, it's the same ruling as before.  I'm going to deny bond pursuant to Article 44.04(c) of the Code of Criminal Procedure.

MR. HUMPHREYS:  Thank you for the Court's time, Your Honor.  Thank you gentleman for your time.

STATE OF TEXAS          *

COUNTY OF DALLAS    *


I, KELLY SIMMONS, a certified shorthand reporter in and for the State of Texas, do hereby certify that the above and forgoing 16 pages contain a full, true and correct transcription of my notes taken upon the occasion set forth in the caption hereof, and has been reduced to typewriting by me.

I further certify that this transcription of my notes truly and accurately reflects the exhibits offered into evidence, if any, and that the cost of said transcription is $85.00.

GIVEN UNDER MY HAND and seal of office on this the 2nd day of February, 2015.


S/S

Kelly Simmons, CSR # 3151

Certified Shorthand Reporter

In and for the State of Texas

806 Middle Glen Dr.

Garland, Texas   75043

(214) 906-4715

My commission expires on 12-31-2017

U5-15-UU485-
FIFTH COURT OF APPE/
DALLAS, TE>
7/6/2015 5:15:55
LISA M/
CLE

*The State does not request oral argument*

No. 05-15-00485-CR

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
7/6/2015 5:15:55 PM
LISA MATZ
Clerk

# IN THE COURT OF APPEALS
# FOR THE FIFTH DISTRICT OF TEXAS
# AT DALLAS

## CLEVELAND NIXON,
Appellant

v.

## THE STATE OF TEXAS,
Appellee

*On Accelerated Appeal from an Appeal Bond Reduction Hearing
In Criminal District Court No. 6
Of Dallas County, Texas
In Cause No. F11-21243-X*

# STATE'S BRIEF

SUSAN HAWK
Criminal District Attorney
Dallas County, Texas

*Counsel of Record:*
MICHAEL J. SANDLIN
Assistant District Attorney
State Bar No. 17621503
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399
(214) 653-3625
Michael.sandlin2@dallascounty.org

*Attorneys for the State of Texas*

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ....................................................... .......iii

STATEMENT OF THE CASE ................................................ ..........1

STATEMENT OF FACTS............................................................. ..........2

SUMMARY OF ARGUMENT ..............................................................9

ARGUMENT.............................................................................................10

RESPONSE TO ISSUE 1...................................................................10

> The trial court did not abuse its discretion by denying Appellant's motion for a personal bond on appeal.

RESPONSE TO ISSUES 2 AND 3............................................................10

> The trial court was not restricted to the evidence from the appeal bond hearing; the findings made by the court are supported by the record.

RESPONSE TO ISSUE 4............................................................................10

> The trial court did not abuse its discretion by finding that Appellant is a continuing threat to the complainant and that there is a high likelihood that Appellant will commit another assaultive offense against her if allowed a bond pending appeal.

PRAYER...................................................................................18

CERTIFICATE OF SERVICE AND WORD-COUNT COMPLIANCE ............18

# INDEX OF AUTHORITIES

## Cases

*Ex parte Mendiola,*
 961 S.W.2d 625 (Tex. App. - San Antonio 1998, no pet.)........................11

*Ex parte Moore,*
 2002 Tex. App. LEXIS 7009 (Tex. App. - Dallas October 2,
 2002, pet. ref'd) (not designated for publication).........................11, 15, 17

*Ex parte Nycum,*
 614 S.W.2d 140 (Tex. Cri. App. 1981)................................................17

*Ex parte Spaulding,*
 612 S.W.2d 509 (Tex. Crim. App. 1981)..............................................11

*In re J.J.C.,*
 302 S.W.3d 436 (Tex. App. - Houston [14th Dist.] 2009,
 pet. denied)...................................................................................13

*In the Interest of J.E.H.,*
 384 S.W.3d 864 (Tex. App. - San Antonio 2012, no pet.)....................13

*Jones v. State,*
 944 S.W.2d 642 (Tex. Crim. App. 1996)..............................................15

*Montgomery v. State,*
 810 S.W.2d 372 (Tex. Crim. App. 1990)..............................................11

*Putnam v. State,*
 592 S.W.2d 146 (Tex. Crim. App. 1979)..............................................17

## Statutes

Tex. Code Crim. Proc. Ann. art. 44.04(b) (West 2006)..............................12

Tex. Code Crim. Proc. Ann. art. 44.04(c) (West 2006)....................11, 12, 15

**TO THE HONORABLE COURT OF APPEALS:**

The State of Texas submits this brief in reply to the brief of Appellant, Cleveland Nixon.

## STATEMENT OF THE CASE

This appeal is an accelerated appeal from the trial court's ruling in a post-conviction bond reduction hearing.

Appellant was originally charged with the offense of injury to a child for having used his hand to strike the child, who was 14 years of age or younger. (RR2: 5; January 9, 2015 CR: 12). Pursuant to a plea bargain agreement, Appellant pleaded guilty and was placed on deferred adjudication probation for five years on June 27, 2012. (RR2: 1-11; January 9, 2015 CR: 21-22).

Subsequently, the trial court conducted a contested revocation hearing on September 29, 2014. (RR4: 1-49). The trial court then adjudicated Appellant's guilt and sentenced him to five years in prison. (RR4: 51-52; January 9, 2015 CR: 50-51; RR4: 51-52).

1

On October 14, 2014, the trial court held a hearing regarding Appellant's appeal bond. (RR5). The trial court denied Appellant's motion. (RR5: 16). This appeal follows.[1]

## STATEMENT OF FACTS

Prior to starting the October 14, 2014 appeal bond hearing, the trial court stated that it had denied defense counsel's oral motion for an appeal bond after hearing and considering the evidence previously presented at the contested revocation hearing on September 29, 2014, as well as the testimony presented at the September 25, 2014 hearing. (RR5: 4). The court then noted that defense counsel wanted "to put a little more testimony on the record concerning the appeal bond." (RR5: 4). The appeal bond hearing followed. (RR5: 4-16). Hence, the trial court had before it all of the evidence presented at the two September hearings plus the evidence offered at the appeal bond hearing in making its ruling.

### Trial evidence

The September 25, 2014 hearing began as a hearing on Appellant's motion to have a bond set in the instant case of injury to a child and a new assault case, which had triggered a probation violation against Appellant.

---

[1] A separate appeal of the revocation is pending in this Court in Cause No. 05-14-01627-CR.

(RR3: 1-6). Keisha Pope Nixon testified that she and Appellant had married on August 9, 2014, in Las Vegas. (RR3: 6-7). She agreed that there is a stay-away order that Appellant is not to have any contact with her. (RR3: 14). Yet, she had been to Appellant's house, and he had been to her house. (RR3: 14). Keisha admitted to the court that she and Appellant had contact with each other, despite the court's order. (RR3: 32). Moreover, they had lived together continuously since they married. (RR3: 7, 17).

Keisha testified that in 2011, she and Appellant had gotten into an argument and Appellant pushed her, at which point her sons came into the room and got into an altercation with Appellant. (RR4: 10-11). Keisha stated that there was shoving between Appellant and her children. (RR4: 11). Keisha wrote a statement at the time of the offense in which she stated that when her son Omar tried to intervene, Appellant punched him in the head and abdomen. (RR4: 12-14). Appellant then slammed her son Oscar into a wall and punched his head and face, specifically his nose. (RR4: 14). As a result of this incident, Appellant pleaded guilty to a misdemeanor assault against her and one of her children, and he pleaded guilty to felony assault against the other child. (RR3: 19-20). Keisha and

3

Appellant both testified that Appellant received five years deferred adjudication in the three cases. (RR3: 33-34, 54; RR4: 8-9).

Appellant, however, testified that no injury occurred to Oscar during the 2011 incident. (RR3: 52-54). Appellant also denied the misdemeanor assault case involving Keisha. (RR3: 52-53). Appellant claimed that he never hit or choked Keisha; instead, he claimed that they fell down and pushing occurred, but Appellant was trying to hold off Keisha and her sons. (RR3: 52-53). Regarding the case against Keisha's son, Appellant testified that he did not know how the son was injured, but that he did not do it. (RR3: 54). In response to questioning from the court, Appellant admitted that he and Keisha were fighting, and the son tried to intervene. (RR3: 54). Appellant then said he did not remember the son getting hit and that the son "didn't intervene at all." (RR3: 54).

Keisha admitted that in March 2014, she called the police and reported two incidents of Appellant strangling her. (RR3: 20-21). However, at the hearing, Keisha explained that she had not been taking her medication at the time and had been drinking, so her written statement to the police was not correct. (RR3: 21; RR4: 19). But Keisha testified that being off her medication did not cause her to hallucinate or to tell lies. (RR3: 21). Keisha testified that around March 6, 2014, she and Appellant

4

were arguing in his truck, and she fell out of the truck after losing her footing while she was trying to exit the vehicle. (RR3: 23-26; RR4: 16-17). After the March incidents, the trial court put Appellant on bond, but bond conditions included that he was to report weekly to the probation department and have no contact with Keisha. (RR3: 31).

Nevertheless, there was another incident in August 2014, in which the Grand Prairie police were called to the hospital by the ER staff. (RR3: 22; RR4: 19-20). At the time, Keisha told the nursing staff that she and Appellant had an argument. (RR3: 22-23; RR4: 19-20). In the police report, Keisha related that Appellant grabbed her by the arms when she was attempting to get into her car. (RR4: 19-22). Keisha reported that she then hit Appellant with a cell phone to get him off of her, but Appellant grabbed her by the shoulders and threw her to the ground. (RR4: 22-23). At the hearing, however, Keisha testified that she no longer recalled what she told the police because she had been drinking at the time of the incident. (RR4: 22-23). Keisha stated that she was intoxicated at the time of the August incident from having drunk almost a full bottle of Moscato. (RR3: 24, 29-30). Keisha now maintained that she told the hospital staff and the police that she tripped over Appellant's leg, fell, and scraped her knee. (RR3: 7, 22-23). She drove herself by herself to the hospital. (RR3:

5

23). Appellant testified that Keisha tripped after she ran up behind him as he ran away from the house. (RR3: 39).

Keisha then testified that Appellant had never assaulted her while he was on his current probation. (RR4: 26-27, 35). She blamed anything she might previously have said about Appellant on her being under the influence of alcohol. (RR4: 27).

Appellant agreed with the trial court that his relationship with Keisha over the last six or seven years had been very traumatic. (RR3: 33). Appellant testified that he married Keisha because she threatened to go forward with false charges against him if he did not. (RR3: 35-37). If he did marry her, Keisha told Appellant that she would file an affidavit of non-prosecution and tell the truth. (RR3: 36-37).

Appellant admitted to the court that he had not always been truthful with his probation officer. (RR3: 48-49). As examples, Appellant lied to his probation officer when he said that he was not having any contact with Keisha, and when he said that he was going to Las Vegas alone. (RR3: 49). According to Appellant, he lied because he was afraid that Keisha would turn him in, which would cause him to lose his job. (RR3: 49).

Appellant told the trial court that he had been in different mental health institutions three times because he heard voices. (RR3: 47-48). His

6

most recent stay had been in February 2014, and he was taking medication. (RR3: 48-49).

The hearing was recessed until September 29, 2014. At this time, defense counsel asked that the hearing be continued as a contested revocation hearing instead of a hearing asking for bond reduction. (RR4: 1-5). Both the defense and the State agreed that the court could incorporate the prior testimony from the hearing the previous week as part of the evidence in the now-contested revocation hearing. (RR4: 5-6). Further, the trial court took judicial notice of entire contents of Appellant's probation file. (RR4: 14, 47, 48). Finally, defense counsel wanted the record to be clear that all of the testimony given at the prior hearing on September 25th was to be incorporated into the record of the continued hearing on September 29th; the trial court agreed. (RR4: 48). At the conclusion of the hearing, the trial court found Appellant guilty of the third-degree felony offense of injury to a child and set his punishment at five years in prison. (RR4: 51-52).

## Appeal Bond Hearing Evidence

On October 14, 2014, at the appeal bond hearing, Keisha testified that the two alleged assaults against her by Appellant did not happen and that the police reports about the incidents were false. (RR5: 5-6). Keisha asked the trial court to set a reasonable appeal bond in Appellant's case.

RR5: 6). Keisha testified that although she had wavered about the alleged assaults previously - by saying that she had been drinking or that she was under medication - she was being clear to the trial court now that Appellant did not assault her on those two occasions. (RR5: 6-7). Instead, Keisha testified that the reports were false. (RR5: 7). She did not anticipate any future assaults by Appellant. (RR5: 7, 13).

Keisha insisted that Appellant had only assaulted her one time three years earlier, for which he had completed deferred adjudication probation. (RR5: 7-8, 12). Keisha agreed that Appellant had also hit her children one time, which resulted in the instant case in which the trial court had revoked his probation and sentenced him to five years in prison. (RR5: 8-9, 12-13). Any other time that Keisha had called the police about being assaulted by Appellant, she had lied to the police. (RR5: 9-10). According to Keisha, she lied to the police about Appellant because she was under stress. (RR5: 10). On the occasion when Keisha went to the hospital and told the doctor that Appellant had hit her, Keisha claimed that she had tripped because she was intoxicated. (RR5: 10). Keisha also claimed that when she took Prozac, she blamed Appellant for hitting her. (RR5: 10-11). Finally, Keisha admitted that she and Appellant went to Las Vegas to get married, in violation of the court order for Appellant to stay away from her.

8

(RR5: 11-12). The trial court then denied Appellant's motion for an appeal bond, which was the same ruling made by the court previously. (RR5: 16).

## SUMMARY OF ARGUMENT

Appellant brings four issues, all of which are related to the trial court's order denying his request for an appeal bond. In response to Appellant's first issue, the trial court did not abuse its discretion by denying Appellant's request for a personal bond. The evidence from the two September 2014 hearings and the appeal bond hearing supports the trial court's determination that Appellant's request for bond pending appeal should be denied. In Appellant's next two issues, he contends that the trial court could only rely on evidence adduced at the appeal bond hearing, and therefore, the trial court's enumerated findings in which the court explained why it was denying Appellant's motion for an appeal bond are not supported by the record. Again, the trial court did not abuse its discretion in denying Appellant's appeal bond. The trial court stated on the record at the appeal bond hearing that the court was considering the two September hearings, in addition to what it was about to hear at the appeal bond hearing, in ruling on the motion. Finally, the trial court's findings are supported by the record, specifically Finding No. 8 that the court properly

9

determined that Appellant was a threat to Keisha and that he might assault her again if on bond.

## ARGUMENT

### RESPONSE TO ISSUE 1
The trial court did not abuse its discretion by denying Appellant's motion for a personal bond on appeal.

### RESPONSE TO ISSUES 2 AND 3
The trial court was not restricted to the evidence from the appeal bond hearing; the findings made by the court are supported by the record.

### RESPONSE TO ISSUE 4
The trial court did not abuse its discretion by finding that Appellant is a continuing threat to the complainant and that there is a high likelihood that Appellant will commit another assaultive offense against her if allowed a bond pending appeal.

Appellant contends that the trial court abused its discretion by denying his request for a personal bond on appeal. Appellant further argues that the trial court was restricted to the evidence presented at the appeal bond hearing, and therefore the evidence was insufficient to support the court's findings against him in denying his appeal bond. Appellant's contentions are without merit and should be overruled.

10

## Standard of Review and Applicable Law

An appellate court reviews a trial court's decision to deny an appeal bond under an abuse of discretion standard. *Ex parte Spaulding*, 612 S.W.2d 509, 511 (Tex. Crim. App. 1981); *Ex parte Moore*, 2002 Tex. App. LEXIS 7009, *3 (Tex. App. - Dallas October 2, 2002, pet. ref'd) (not designated for publication), citing *Ex parte Mendiola*, 961 S.W.2d 625, 626 (Tex. App. - San Antonio 1998, no pet.). To determine whether a trial court abused its discretion, a reviewing court must decide whether the trial court acted without reference to any guiding rules or principles, or whether the act was arbitrary or unreasonable. *See Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). Merely because a trial court decides a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.*

Appellant was sentenced to five years' confinement for his third-degree felony; thus, he is eligible for an appeal bond under article 44.04(c) of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 44.04(c) (West 2006). Under Article 44.04, some defendants are eligible for bond pending appeal, which provides, in relevant part, as follows:

11

(b) The defendant may not be released on bail pending the appeal from any felony conviction where the punishment equals or exceeds 10 years confinement or where the defendant has been convicted of an offense listed under Section 3g(a)(1), Article 42.12, but shall immediately be placed in custody and the bail discharged.

(c) Pending the appeal from any felony conviction other than a conviction described in Subsection (b) of this section, **the trial court may deny bail and commit the defendant to custody if there then exists good cause to believe that the defendant would not appear when his conviction became final or is likely to commit another offense while on bail,** permit the defendant to remain at large on the existing bail, or, if not then on bail, admit him to reasonable bail until his conviction becomes final. The court may impose reasonable conditions on bail pending the finality of his conviction. On a finding by the court on a preponderance of the evidence of a violation of a condition, the court may revoke the bail.

*Id.* art. 44.04(b), (c) (emphasis added).

## Application of Law to Facts

At the appeal bond hearing, the trial court stated that it had considered the evidence presented previously at the contested revocation hearing on September 29th, as well as the testimony presented at the September 25th hearing, when the court denied counsel's oral request for an appeal bond. (RR5: 4). The court noted that defense counsel wanted "to put a little more testimony on the record concerning the appeal bond," and the appeal bond hearing followed. (RR5).

A trial court is not required to explicitly state that it is taking "judicial

12

notice" of its prior proceedings. *See In re J.J.C.,* 302 S.W.3d 436, 446 (Tex. App. - Houston [14th Dist.] 2009, pet. denied). Even when the record is silent, the trial court may be presumed to have taken judicial notice of the records in the court's file without any request being made and without an announcement in the record that it has done so. *In the Interest of J.E.H.,* 384 S.W.3d 864, 869-870 (Tex. App. - San Antonio 2012, no pet.). Hence, the trial court had before it all of the evidence presented at the two September hearings plus the evidence at the appeal bond hearing.

The trial court made specific findings regarding its order denying Appellant's motion for bond pending appeal, as follows:

"1. The Court finds that the Defendant violated the no contact order in place and had prohibited contact with the complainant, Keisha Pope while on probation.

2. At the hearings on the motion to revoke, which were conducted in September and October of 2014 the Court heard testimony that the Defendant and the complainant had a history of violent confrontations. For example, during their relationship, the Defendant assaulted both of the complainant's sons. One son was slammed against the wall and the other son was punched in the head and face, while trying to help protect their mother from being assaulted by Defendant.

13

3. In March, 2014, the Complainant reported that the Defendant assaulted her by strangulation and she injured her arm. During this timeframe, the Complainant also reportedly fell out of a car the Defendant was driving.

4. In July of 2014, the Defendant had the Complainant arrested after coming to his house uninvited. The Defendant has asked the Complainant to stay away from him.

5. On 8/14/14, the Complaint went to the emergency room for a knee injury she suffered when the Defendant grabbed her by the arm and threw her down during an argument with the Defendant. The defendant and the complainant were arguing over his affair with a co-worker.

6. On August 27, 2014, the Complainant called the Grand Prairie police department and reported that the Defendant choked her, beat her, and sat on her chest.

7. On October 27, 2014, another assault report was made by the Complainant.

8. The court finds that the Defendant is a continuing threat to the Complainant and that there is a high likelihood that the Defendant will commit another assaultive offense against the Complainant if allowed an

14

appeal bond. *See* Tex. Code Crim. Proc. Ann. art. 44.04(c). Accordingly, the court denies the Defendant's request for bond pending appeal."
(May 15, 2015 Supp. CR: 8-9).

As the fact finder in the underlying criminal case, the trial court was free to believe or disbelieve the testimony of any witness. *See Jones v. State,* 944 S.W.2d 642, 647-48 (Tex. Crim. App. 1996); *Ex parte Moore,* 2002 Tex. App. LEXIS 7009 at *5.

The record in this case is replete with evidence showing that both Appellant and his wife Keisha change their version of events to fit their needs.

Appellant admitted to the trial court that he was not always truthful to his probation officer, he admitted injuring Keisha's sons, then said he did not injure one of them. Keisha fares no better. The versions of events she gave to various police agencies of Appellant assaulting and strangling her on different occasions she now denies remembering or denies outright and blames her drinking or taking medication. The trial court certainly could have determined that there was a lack of credibility or trustworthiness of either Appellant's and Keisha's current versions of events, which minimize Appellant's bad acts to a single assault in 2011.

15

Further, Appellant continued committing assaultive crimes against Keisha after he received deferred adjudication for injury to her son Omar that occurred on June 11, 2011. (January 9, 2005 CR: 12). Both Keisha and Appellant testified several times that they remained in contact, and even married, although Appellant was required to stay away from Keisha, pursuant to the trial court's order. Also while on probation, Keisha called the police twice in March 2014 to report that Appellant had strangled her. (RR3: 23-26). There was yet another incident in August 2014, when the Grand Prairie police were called to the hospital by the ER staff, and Keisha told the officers that Appellant had grabbed her by the arms and shoulders and thrown her to the ground. (RR3: 22-23; RR4: 19-23).

The record is clear that Appellant has not followed the terms and conditions of his deferred adjudication, and there is no reason for the court to believe that Appellant would not assault Keisha in the future. It was not an abuse of discretion for the trial court to make findings, the final one which stated that Appellant is a continuing threat to Keisha and that there is a high likelihood that he would commit another assaultive offense against her if he was free on bond during the pendency of his appeal. Evidence adduced that Appellant continued committing assaultive offenses against Keisha while on deferred adjudication "far exceeds the statutory

16

requirement that the court find only that [Appellant] is likely to commit another offense while on bail," and therefore, the trial court did not abuse its discretion by denying Appellant's request for an appeal bond. *Ex parte Moore*, 2002 Tex. App. LEXIS at *4-6 (where defendant committed a third forgery offense while on bail pending trial for the other two forgeries, evidence far exceeded statutory requirement), citing *Ex parte Nycum*, 614 S.W.2d 140,141 (Tex. Crim. App. 1981) (quoting *Putnam v. State*, 592 S.W.2d 146 (Tex. Crim. App. 1979)).

Appellant points out that trial court finding No. 7 reflects that another assault report was made by Keisha on October 27, 2014. Since the appeal bond hearing date was October 14, 2014, which was 13 days prior to the date alleged, Appellant contends that finding No. 7 is not supported by the record. It would appear that the "October 27, 2014" date is clerical error and may have been regarding the "August 27" incident. Regardless of any technical errors, the findings by the trial court show that Appellant continued to violate his probation by continually assaulting Keisha. The court did not abuse its discretion by denying Appellant's request for an appeal bond.

This Court should determine that the trial court did not abuse its discretion in denying Appellant's request for a personal bond and overrule all four of his issues.

## PRAYER

The State prays that this Honorable Court will affirm the judgment of the trial court.

Respectfully submitted,

/s/ *Michael J. Sandlin*

SUSAN HAWK
Criminal District Attorney
Dallas County, Texas

MICHAEL J. SANDLIN
Assistant District Attorney
State Bar No. 17621503
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399
(214) 653-3625
michael.sandlin2@dallascounty.org

## CERTIFICATE OF SERVICE AND WORD-COUNT COMPLIANCE

A copy of this brief was mailed to James H. Dyer and Joseph D. Libby, 3501 Prairie St., Suite 100, Houston, TX 77002, and emailed to josephlibbyattorney@yahoo.com, on July 6, 2015. The total word count in this document is 4,182.

/s/ *Michael J. Sandlin*
MICHAEL J. SANDLIN

18



**CLERK'S RECORD**

VOLUME: <u>One</u> OF <u>One</u>

TRIAL COURT CAUSE NUMBER: <u>F11-21243-X</u>

IN THE <u>CRIMINAL DISTRICT COURT NO.6</u> OF DALLAS COUNTY, TEXAS

HONORABLE <u>JEANINE HOWARD</u>, JUDGE PRESIDING

<u>CLEVELAND NIXON</u>, PLAINTIFF (APPELLANT)
vs.

<u>THE STATE OF TEXAS</u>, DEFENDANT (APPELLEE)

APPEALED TO THE: 5TH COURT OF APPEALS

ATTORNEY NAME: Kristin Brown

ATTORNEY ADDRESS: 1701 North Market Street, Suite 402, Dallas, Texas 75202

ATTORNEY PHONE: 214-446-3909
ATTORNEY FAX: 214-481-4868

ATTORNEY EMAIL:N/A

ATTORNEY BAR NO: 24081458

ATTORNEY FOR APPELLANT: CLEVELAND NIXON

DELIVERED TO THE: 5TH COURT OF APPEALS

ON: <u>May 15, 2015</u>     BY: <u>JAMEKA RAND</u>   DEPUTY DISTRICT CLERK

APPELLATE COURT CAUSE NO: 05-14-01627-CR

CLEVELAND NIXON  CAUSE NO: F11-21243-X

VS.  CRIMINAL DISTRICT COURT NO.6

THE STATE OF TEXAS  COURT OF DALLAS COUNTY, TEXAS

# SUPPLEMENTAL

| | |
|---|---|
| Clerk's Record | Vol.1-01 |
| Index | Vol. 1-02 |
| Caption | Vol.1-03 |
| Trial Court's Certification of Defendant's Right of Appeal (1 Oct 2014) | Vol.1-04 |
| Motion for Reasonable Bail Pending Appeal (2 Jan 2015) | Vol.1-05 |
| Order on Defendant's Motion for Bond Pending Appeal (2 Apr 2015) | Vol.1-08 |
| Amended Motion for New Trial (30 Oct 2014) | Vol.1-10 |
| Defendant's Motion for New Trial (2 Oct 2014) | Vol.1-15 |
| Notice of Appeal (13 Apr 2015) | Vol.1-16 |
| Bill of Costs Certification | Vol.1-17 |
| Clerk's Certification | Vol.1-25 |

**The State of Texas §**

**County of Dallas §**

In the CRIMINAL DISTRICT COURT NO.6 of Dallas County, Texas
Honorable JEANINE HOWARD Judge Presiding, the following proceedings were held and the following instruments and other papers were filed in this cause, to wit:

**TRIAL COURT CAUSE NUMBER: F11-21243-X**

| | |
|---|---|
| **STATE OF TEXAS** | **In The CRIMINAL DISTRICT COURT NO. 6** |
| **VS.** | |
| **CLEVELAND NIXON** | **DALLAS COUNTY, TEXAS** |

3

Cause No. _F11-7123_

FILED
2014 OCT -1 AM 9: 15
GARY FITZSIMMONS
DISTRICT CLERK
DALLAS TEXAS
_____DEPUTY

| THE STATE OF TEXAS | § | IN THE _CDC-6_ |
|---|---|---|
| VS. | § | DISTRICT COURT |
| _CLEVELAND NIXON_ | § | DALLAS COUNTY, TEXAS |

## TRIAL COURT'S CERTIFICATION OF DEFENDANT'S RIGHT OF APPEAL*

I, judge of the trial court, certify this criminal case:

☒ ~~is not a plea-bargain case, and the defendant has the right of appeal, [or]~~

☐ ~~is a plea-bargain case, but matters were raised by written motion filed and ruled~~ on before trial, and not withdrawn or waived, and the defendant has the right of appeal, [or]

☐ is a plea-bargain case, but the trial court has given permission to appeal, and the defendant has the right of appeal, [or]

☐ is a plea-bargain case, and the defendant has NO right of appeal, [or]

☐ the defendant has waived the right of appeal, [or]

☐ other (please specify): _____

_____          _9/29/14_____
Judge                               Date Signed

I have received a copy of this certification. I have also been informed of my rights concerning any appeal of this criminal case, including any right to file a *pro se* petition for discretionary review pursuant to Rule 68 of the Texas Rules of Appellate Procedure. I have been admonished that my attorney must mail a copy of the court of appeals' judgment and opinion to my last known address and that I have only 30 days in which to file a *pro se* petition for discretionary review in the Court of Criminal Appeals. Tex. R. App. P. 68.2. I acknowledge that, if I wish to appeal this case and if I am entitled to do so, it is my duty to inform my appellate attorney, by written communication, of any change in the address at which I am currently living or any change in my current prison unit. I understand that, because of appellate deadlines, if I fail to timely inform my appellate attorney of any change in my address, I may lose the opportunity to file a *pro se* petition for discretionary review.

_____          _____
Defendant (if not represented by counsel)    Defendant's Counsel
Mailing Address:                    State Bar No.: _1027770_
                                    Mailing Address:
Telephone #:
Fax # (if any):                     Telephone #:
                                    Fax # (if any):

* A defendant in a criminal case has the right of appeal under these rules. The trial court shall enter a certification of the defendant's right to appeal in every case in which it enters a judgment of guilt or other appealable order. In a plea bargain case- — that is, a case in which a defendant's plea was guilty or nolo contendere and the punishment did not exceed the punishment recommended by the prosecutor and agreed to by the defendant — a defendant may appeal only: (A) those matters that were raised by written motion filed and ruled on before trial, or (B) after getting the trial court's permission to appeal." TEXAS RULE OF APPELLATE PROCEDURE 25.2(a)(2).

4

NO. F1121243X

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL DISTRICT COURT |
| | § | |
| vs. | § | NO. 6 of |
| | § | |
| CLEVELAND NIXON | § | DALLAS COUNTY, TEXAS |

## MOTION FOR REASONABLE BAIL PENDING APPEAL

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Cleveland Nixon, Defendant in the above styled and numbered cause, and moves this Court to set bail in a reasonable amount pending appeal, pursuant to Tex. Code Crim. Proc. Ann. art. 44.04(c), and shows the following in support.

1.      Cleveland Nixon was convicted of the third degree felony offense of Injury to a child on 9/29/2014, and on the same date was sentenced to 5 years imprisonment. A timely filed Motion for New Trial was filed on October 2, 2014 and a first amended Motion for New Trial was timely filed under the mail box rule on October 28, 2014 (received by the District Clerk and file stamped October 30, 2014). Written notice of appeal was timely filed on December 29, 2014.

2.      Tex. Code Crim. Proc. Ann. art. 44.04(c) provides, in pertinent part:

"Pending the appeal from any felony conviction other than a conviction described in Subsection (b) of this section, the trial court may deny bail and commit the defendant to custody if there then exists good cause to believe that the defendant would not appear when his conviction became final or is likely to commit another offense while on bail, permit the defendant to remain at large on the existing bail, or, if not then on bail, admit him to reasonable bail until his conviction becomes final. The court may impose reasonable conditions on bail pending the finality of his conviction. On a finding by the court on a preponderance of the evidence of a violation of a condition, the court may revoke the bail."

5

3. Cleveland Nixon's punishment does not equal or exceed 10 years. Cleveland Nixon's conviction is not one of those listed in Article 44.04(b) or Section 3g(a)(1), Article 42.12. There is no cause to believe that Cleveland Nixon will not appear should conviction become final. and there is no cause to believe that Cleveland Nixon will likely commit another offense while on bail. Accordingly. Cleveland Nixon is eligible for bail pending appeal under Article 44.04(c).

4. Considering the totality of circumstances. Cleveland Nixon requests that he be admitted to reasonable bail until conviction becomes final.

WHEREFORE, PREMISES CONSIDERED. Cleveland Nixon prays that this Court set a reasonable bail pending disposition of appeal.

Respectfully submitted.

DYER & LIBBY
1305 Prairie St., Suite 100
Houston. Texas 77002
Tel: (713) 222-7757
Fax: (713) 222-7758

By: _____
James H. Dyer
State Bar No. 06315700
josephlibbyattorney@yahoo.com
Attorney for Cleveland Nixon

### CERTIFICATE OF SERVICE

This is to certify that on January 2. 2015, a true and correct copy of the above and foregoing document was served on the District Attorney's Office. Dallas County, by facsimile transmission to 214-653-5774.

_____
James H. Dyer

6

NO. F1121243X

| STATE OF TEXAS | § | IN CRIMINAL DISTRICT COURT |
|---|---|---|
| | § | |
| vs. | § | No. 6 of |
| | § | |
| CLEVELAND NIXON | § | DALLAS COUNTY, TEXAS |

## ORDER FOR A SETTING

On _____, 2015, the Defendant filed a Motion For Reasonable Bail Pending Appeal. The Court finds that the party is entitled to a hearing on this matter, and it is THEREFORE ORDERED that a hearing on this motion is set for _____, at _____.

Signed on _____.


_____
JUDGE PRESIDING

7

Cause No. F11-21243-X

FILED
2015 APR -2 PM 12: 52
FELICIA PITRE
DISTRICT CLERK
DISTRICT COURTS TEXAS
_____DEPUTY

| STATE OF TEXAS | § | IN THE CRIMINAL |
| VS. | § | DISTRICT COURTS NO. 6 |
| CLEVELAND NIXON | § | DALLAS COUNTY, TEXAS |

## ORDER ON DEFENDANT'S MOTION
## FOR BOND PENDING APPEAL

The Court after taking testimony and hearing argument on the Defendant's request for bond pending appeal hereby makes the following findings:

1.     The Court finds that the Defendant violated the no contact order in place and had prohibited contact with the complainant, Keisha Pope while on probation.

2.     At the hearings on the motion to revoke, which were conducted in September and October of 2014, the Court heard testimony that the Defendant and the complainant had a history of violent confrontations. For example, during their relationship, the Defendant assaulted both of the complainant's sons. One son was slammed against the wall and the other son was punched in the head and face, while trying to help protect their mother from being assaulted by Defendant.

3.     In March, 2014, the Complainant reported that the Defendant assaulted her by strangulation and she injured her arm. During this timeframe, the Complainant also reportedly fell out of a car the Defendant was driving.

4.     In July of 2014, the Defendant had the Complainant arrested after coming to his house uninvited. The Defendant has asked the Complainant to stay away from him.

5.     On 8/14/14, the Complainant went to the emergency room for a knee injury she suffered when the Defendant grabbed her by the arm and threw her down during an argument with the Defendant. The Defendant and the complainant were arguing over his affair with a co-worker.

6.     On August 27, 2014, the Complainant called the Grand Prairie police department and reported that the Defendant choked her, beat her, and sat on her chest.

7.     On October 27, 2014, another assault report was made by the Complainant.

8.     The court finds that the Defendant is a continuing threat to the Complainant and that there is a high likelihood that the Defendant will commit another assaultive offense

8

against the Complainant if allowed an appeal bond. *See* Tex. Code Crim. Proc. Ann. art. 44.04(c). Accordingly, the court denies the Defendant's request for bond pending appeal.

**IT IS THEREFORE ORDERED** that the Defendant's request for bond pending appeal is hereby DENIED.

**IT IS FURTHER ORDERED** that clerk of the Court shall send a copy of this order to Applicant's attorney, Joseph Libby, Dyer and Libby, 1305 Prairie Street, Suite100, Houston, Texas 77002 and to counsel for the State. The clerk of the court shall also send a copy of this order in a supplemental transcript to the Fifth Court of Appeals at Dallas.

**SIGNED** this 2nd day of April, 2015.

JUDGE JEANINE HOWARD
CRIMINAL DISTRICT COURT NO. 6
DALLAS COUNTY, TEXAS

9

FILED

STATE OF TEXAS § IN THE CRIMINAL DISTRICT 3: 40
§
V. § COURT #6
§
CLEVELAND NIXON § DALLAS COUNTY TEXAS DEPUTY

## AMENDED MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT

COMES NOW, Cleveland Nixon, the Defendant in the above styled and numbered cause, and files this Amended Motion for New Trial pursuant to Rules 21 and 22 of the Texas Rules of Appellate Procedure, and in support thereof would show this court the following:

1. The Defendant was sentenced on September 29, 2014. This Motion, filed within the thirty-day timetable, is therefore timely. A hearing must be commenced before the 75th day after the sentence, which date is December 13, 2014, or this motion is overruled by operation of law.

2. There is an issue of ineffective assistance of counsel at the hearing to revoke probation, which hearing was held on September 29, 2014. At the time of the alleged violations of the conditions of probation in the amended motion to revoke, Defendant's former attorney performance was defective, because of his failure to allege the affirmative defense of insanity. The affirmative defense of insanity was available to the Defendant at the September 29, 2014, hearing to revoke probation. The Amended Motion To Revoke Or Proceed With An Adjudication of Guilt alleged (1) On or about August 27, 2014, Defendant committed assault family violence, the alleged victim being Keisha Pope; On or about March 17, 2014, Defendant committed the offense of assault family violence by impeding airway of Keisha Pope; (3) Defendant failed to refrain from contact with Keisha Pope. Defendant has a long history of a

10

severe mental disease or defect. Defendant was admitted into Hickory Trail Hospital on February 15, 2011. At the time of his discharge from Hickory Trail Hospital on February 22, 2011, Defendant was diagnosed with a severe condition of schizophrenia, paranoid type and depression disorder. Defendant was admitted into Timberlawn Mental Health Systems on August 21, 2011. On discharge from Timberlawn Mental Health Systems, Defendant was given the diagnosis of schizophrenia. On March 31, 2014, Defendant was admitted into Dallas Behavioral Healthcare Hospital. Defendant was diagnosed on discharge on April 7, 2014, with a severe condition of schzioaffective disorder, bipolar type, chronic and acute exacerbation. Defendant was also diagnosed with problems with primary support group.

3. At the time of Defendant's discharge on April 7, 2014, the alleged victim, Keisha Pope, was in control of Defendant's finances, and had excluded any other persons from assuming her control. Throughout the applicable probation period for Defendant, he was under the influence of voices and depression. The voices gave Defendant a warped sense of reality and his condition of bipolar depression also skewed the Defendant's mental reasoning. The Defendant's mental condition severely impaired the Defendant's ability to rationally reason and act. As a result of the Defendant's mental condition, his understanding reality would have impaired his judgment as to whether some of the alleged violation were wrong. Also there is testimony and statements from Keisha Pope that her description of assaults against her by Defendant were not completely accurate.

4. Defendant's prior counselor did not raise any of the available defenses of mental illness either on the issues of guilt or not truth as to the violation of probation because of a severe mental disorder. In the alternative, Defendant's mental condition would at the very least have been a mitigating factor on the issue punishment. Defendant's former counsel's performance at

the hearing on the State' Amended Motion To Revoke Probation Or Proceed With An Adjudication Of Guilt was defective. Failure to raise or apprise the Court of Defendant's mental disease or defect at the hearing to revoke probation on September 29, 2014, definitely prejudiced the Defendant's defense. In fact Defendant's mental disease may have been his only defense. Considering the detailed mental health history documented by Dallas Behavioral Helathcare Hosptial, Hickory Trails Hospital, and Timberlawn Mental Health Systems there is a reasonable probability that the results of the proceedings to revoke probation would have been different, but for Defendant's former counselor's failure to raise Defendant's affirmative defense of insanity or mental defect.

5. The trial court has the discretion to grant a new trial in the interests of justice, as the Court of Criminal Appeals has emphasized:

> For more than one hundred and twenty years, our trial judges have had the discretion to grant new trials in the interest of justice. In <u>Mullins v. State</u>, 37 Tex. 337, 339-340 (1872-73), the Supreme Court, which at that time had criminal jurisdiction, held:

>> . . . The discretion of the District Court, in granting new trials, is almost the only protection to the citizen against the illegal or oppressive verdicts of prejudiced, careless, or ignorant juries, and we think the District Court should never hesitate to use that discretion whenever the ends of justice have not been attained by those verdicts.

<u>State v. Gonzalez</u>, 855 S.W.2d 692 (Tex. Crim. App. 1993).

5. For the foregoing reasons, and for such other reasons that may arise on the hearing of this Motion, Defendant requests a new hearing on the issue of revocation.

## AFFIDAVIT OF JAMES E. POLK

BEFORE ME, the undersigned authority, appeared James E. Polk, who after being duly sworn by me stated the following under oath:

"My name is James E. Polk. I am the attorney for the Defendant, Cleveland Nixon in this cause. I am over the age of 18 years, have never been convicted of a felony, and am competent to make this affidavit.

1. I have requested and received business records affidavits from Dallas Behavioral Healthcare Hospital, Timberlawn Mental Health System, and Hickory Trail Hospital for mental health records of the Defendant, Cleveland Nixon. I have reviewed all of the mental health records from the various mental health institutions. I have interviewed Keisha Pope on the various allegations and charges against the Defendant. The statement and allegations concerning the Defendant's mental health diagnosis from the various mental health institution as alleged in the above amended motion for rehearing are true.

2. The allegations concerning the alleged victim's account of the events as made to counsel are true.

Affiant further sayeth naught.



.JAMES E. POLK, Affiant

**SUBSCRIBED AND SWORN TO BEFORE ME,** on this the _____ day of October, 2014 to certify which witness my hand and official seal.

DEBORAH K. FARMER
Notary Public, State of Texas
My Commission Expires
November 18, 2014

Notary Public, State of Texas

AMENDED MOTION FOR NEW TRIAL                    Page 5

13

FILED
'4 OCT 30 PM 3: 48
...FITZSIMMONS
DISTRICT CLERK
DALLAS CO.. TEXAS

**JAMES E. POLK, II**
**ATTORNEY AND COUNSELOR AT LAW**
2201 Main Street
Suite 1018, Lock Box 107
Dallas, Texas 75201

(214) 742-9805                                                                    Fax (214) 742-7212

October 28, 2014

U.S. CERTIFIED MAIL RETURN RECEIPT REQUESTED NO. 7014-0510-0000-1329-9853

Dallas County District Clerk
Attn: Gary Fitzsimmons
600 Commerce Street, Suite 103
Dallas, Texas 75202

        Subject:      State of Texas v. Cleveland Nixon
                     Cause No. F11-21243

Dear Mr. Fitzsimmons:

Please find enclosed one original and one copy of Defendant's Amended Motion for New Trial. Please file the original motion, and return the file-marked copy in the enclosed self-addressed stamped envelope. Your assistance and cooperation in this matter is greatly appreciated.

                    Yours sincerely,

                    Meagan Z. Polk

Enclosures

cc:

        Dallas County District Attorney     FAXED TO READER AT (214) 653-5774
        Attn: Craig Watkins
        Frank Crowley Courts Building
        133 North Riverfront, Lock Box 19
        Dallas, Texas 75207

14

FILED
2014 OCT -2 AM 9: 00
GARY FITZSIMMONS
DISTRICT CLERK
DALLAS COUNTY TEXAS
DEPUTY

THE STATE OF TEXAS

VS.

CLEVELAND NIXON

CAUSE NO. F11-24243

_____CDC'6_____ DISTRICT COURT_____

DALLAS COUNTY, TEXAS

## DEFENDANT'S MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes the Defendant in the above cause and by his Attorney, and moves the Court

to grant him a New Trial herein for the good and sufficient reason that the verdict is contrary to

the law and the evidence.

Wherfore, Defendant prays the Court grant a new trial herein.

Respectfully submitted,

_____
Attorney for Defendant

_____
Defendant

## ORDER

The above Motion is hereby (granted) (overruled).

_____
Judge

15

**NO. F1121243X**

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN CRIMINAL DISTRICT COURT |
| | § | |
| VS. | § | NO. 6 OF |
| | § | |
| CLEVELAND NIXON | § | DALLAS COUNTY, TEXAS |

## NOTICE OF APPEAL

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Cleveland Nixon, Defendant in the above styled and numbered cause, and hereby gives this written notice of appeal to the Court of Appeals of the State of Texas sitting in Dallas, Texas from the "Order on Defendant's Motion for Bond Pending Appeal signed by the court on April 2, 2015.

Respectfully submitted,

DYER & LIBBY
1305 Prairie St., Suite 100
Houston, Texas 77002
Tel: (713) 222-7757
Fax: (713) 222-7758

_____
James H. Dyer
State Bar No. 06315700
Joseph D. Libby
State Bar No. 12318500
josephlibbyattorney@yahoo.com
Attorney for Cleveland Nixon

FILED
2015 APR 13 PH 2: 23
FELICIA PITRE
DISTRICT CLERK
DALLAS CO. TEXAS
_____ DEPUTY

## CERTIFICATE OF SERVICE

This is to certify that on April 13, 2015, a true and correct copy of the above and foregoing document was served on the District Attorney's Office, Dallas County, by facsimile transmission to 214-653-5774.

_____
James H. Dyer

16

CLEVELAND NIXON

VS.

THE STATE OF TEXAS

CAUSE NO F11-21243-X

IN CRIMINAL DISTRICT COURT NO.6

DALLAS COUNTY, TEXAS

### BILL OF COSTS CERTIFICATION

I, Felicia Pitre, Clerk of the District Courts of Dallas County, Texas do hereby

Certify that the following documents constitute costs that have accrued to date,

12ᵗʰ January 2015 as listed in the Dallas County mainframe for the above captioned

cause.

GIVEN UNDER MY HAND AND SEAL of office in Dallas County, Texas on this

12ᵗʰ January 2015

Digitally signed by

*Jameka Rand*

**Jameka Rand**

J. Rand          Deputy District Clerk

THE STATE OF TEXAS
COUNTY OF DALLAS

I, Gary Fitzsimmons, District Clerk of
Dallas County, Texas, do hereby certify
that the foregoing is a true and correct
copy as the same appears on record now
on file in my office.

Witness my official hand and seal of
office, this ___1 · 12 15___ .

GARY FITZSIMMONS, DISTRICT CLERK
Dallas County, Texas

By: _____



17

CASE NO. F-1121243-X  NAME VALIDATION NIXON C OFFENSE DATE 06/11/11 PAGE NO.  1

| AUDIT DATE | TRAN DATE | TRANSACTION DESCRIPTION | TRAN CODE | CHARGES | DEPOSITS | REFER. NO. | PAYMENT CHECK NUMBER |
|---|---|---|---|---|---|---|---|
| 07/26/13 | 06/27/12 | JSF4 | 008 | 5.40 | | 000001 | |
| 07/26/13 | 06/27/12 | CLK | 031 | 40.60 | | 000001 | |
| 07/26/13 | 06/27/12 | IDF | 038 | 2.00 | | 000001 | |
| 07/26/13 | 06/27/12 | TECH | 056 | 4.00 | | 000001 | |
| 07/26/13 | 06/27/12 | CHSF | 065 | 5.00 | | 000001 | |
| 07/26/13 | 06/27/12 | RMPF | 066 | 22.50 | | 000001 | |
| 07/26/13 | 06/27/12 | CCC | 077 | 133.00 | | 000001 | |
| 07/26/13 | 06/27/12 | CCRM | 098 | 2.50 | | 000001 | |
| 07/26/13 | 06/27/12 | SJURY | 099 | 4.00 | | 000001 | |
| 07/26/13 | 06/27/12 | FINE | 061 | 1000.00 | | 000001 | |
| 07/26/13 | 06/27/12 | TRNS F | 088 | 26.00 | | 000001 | |
| | | 000001 | | | | | |
| 07/20/12 | 07/20/12 | JSF4 | 008 | | 2.47 | F55161 | 1149533 |
| 07/20/12 | 07/20/12 | CLK | 031 | | 18.54 | F55161 | 1149533 |
| 07/20/12 | 07/20/12 | IDF | 038 | | .91 | F55161 | 1149533 |
| 07/20/12 | 07/20/12 | TECH | 056 | | 1.83 | F55161 | 1149533 |
| 07/20/12 | 07/20/12 | CHSF | 065 | | 2.28 | F55161 | 1149533 |

------------------------  PRESS PA1 KEY FOR MORE RECORDS  ------------------------

18

CASE NO. F-1121243-X   NAME VALIDATION NIXON C OFFENSE DATE 06/11/11 PAGE NO.  2

| AUDIT DATE | TRAN DATE | TRANSACTION DESCRIPTION | TRAN CODE | CHARGES | DEPOSITS | REFER. NO. | PAYMENT CHECK NUMBER |
|------------|-----------|-------------------------|-----------|---------|----------|------------|----------------------|
| 07/20/12 | 07/20/12 | RMPF | 066 | | 10.27 | F55161 | 1149533 |
| 07/20/12 | 07/20/12 | CCC | 077 | | 60.73 | F55161 | 1149533 |
| 07/20/12 | 07/20/12 | TRNS F | 088 | | 2.00 | F55161 | 1149533 |
| 07/20/12 | 07/20/12 | CCRM | 098 | | 1.14 | F55161 | 1149533 |
| 07/20/12 | 07/20/12 | SJURY | 099 | | 1.83 | F55161 | 1149533 |

PAYMENT TYPE CC    THE RECEIPT ABOVE WAS PAID BY – CLEVELAND NIXON

| AUDIT DATE | TRAN DATE | TRANSACTION DESCRIPTION | TRAN CODE | CHARGES | DEPOSITS | REFER. NO. | PAYMENT CHECK NUMBER |
|------------|-----------|-------------------------|-----------|---------|----------|------------|----------------------|
| 07/28/12 | 07/28/12 | IP PLN | 084 | 25.00 | | 000002 | |

000002 BATCH 31 DAY FEES

| AUDIT DATE | TRAN DATE | TRANSACTION DESCRIPTION | TRAN CODE | CHARGES | DEPOSITS | REFER. NO. | PAYMENT CHECK NUMBER |
|------------|-----------|-------------------------|-----------|---------|----------|------------|----------------------|
| 08/20/12 | 08/20/12 | JSF4 | 008 | | 2.03 | F58726 | 1157031 |
| 08/20/12 | 08/20/12 | CLK | 031 | | 15.32 | F58726 | 1157031 |
| 08/20/12 | 08/20/12 | IDF | 038 | | .76 | F58726 | 1157031 |
| 08/20/12 | 08/20/12 | TECH | 056 | | 1.51 | F58726 | 1157031 |
| 08/20/12 | 08/20/12 | CHSF | 065 | | 1.89 | F58726 | 1157031 |
| 08/20/12 | 08/20/12 | RMPF | 066 | | 8.49 | F58726 | 1157031 |
| 08/20/12 | 08/20/12 | CCC | 077 | | 50.19 | F58726 | 1157031 |
| 08/20/12 | 08/20/12 | IP PLN | 084 | | 17.36 | F58726 | 1157031 |
| 08/20/12 | 08/20/12 | TRNS F | 088 | | 2.00 | F58726 | 1157031 |

----------------------- PRESS PA1 KEY FOR MORE RECORDS  -------------------------

19

CASE NO. F-1121243-X   NAME VALIDATION NIXON C OFFENSE DATE 06/11/11 PAGE NO.   3

| AUDIT DATE | TRAN DATE | TRANSACTION DESCRIPTION | TRAN CODE | CHARGES | DEPOSITS | REFER. NO. | PAYMENT CHECK NUMBER |
|---|---|---|---|---|---|---|---|
| 08/20/12 | 08/20/12 | CCRM | 098 | | .94 | F58726 | 1157031 |
| 08/20/12 | 08/20/12 | SJURY | 099 | | 1.51 | F58726 | 1157031 |

PAYMENT TYPE CC    THE RECEIPT ABOVE WAS PAID BY - CLEVELAND NIXON

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 09/24/12 | 09/24/12 | JSF4 | 008 | | .90 | F62548 | 1192813071 |
| 09/24/12 | 09/24/12 | CLK | 031 | | 6.74 | F62548 | 1192813071 |
| 09/24/12 | 09/24/12 | IDF | 038 | | .33 | F62548 | 1192813071 |
| 09/24/12 | 09/24/12 | TECH | 056 | | .66 | F62548 | 1192813071 |
| 09/24/12 | 09/24/12 | CHSF | 065 | | .83 | F62548 | 1192813071 |
| 09/24/12 | 09/24/12 | RMPF | 066 | | 3.74 | F62548 | 1192813071 |
| 09/24/12 | 09/24/12 | CCC | 077 | | 22.08 | F62548 | 1192813071 |
| 09/24/12 | 09/24/12 | IP PLN | 084 | | 7.64 | F62548 | 1192813071 |
| 09/24/12 | 09/24/12 | TRNS F | 088 | | 2.00 | F62548 | 1192813071 |
| 09/24/12 | 09/24/12 | CCRM | 098 | | .42 | F62548 | 1192813071 |
| 09/24/12 | 09/24/12 | SJURY | 099 | | .66 | F62548 | 1192813071 |
| 09/24/12 | 09/24/12 | FINE | 061 | | 54.00 | F62548 | 1192813071 |

PAYMENT TYPE ML    THE RECEIPT ABOVE WAS PAID BY - DEFF

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 09/24/12 | 09/24/12 | FINE | 061 | | 2.00 | F62549 | 1192813094 |

PAYMENT TYPE ML    THE RECEIPT ABOVE WAS PAID BY - DEFF

------------------------    PRESS PA1 KEY FOR MORE RECORDS    ------------------------

20

CASE NO. F-1121243-X  NAME VALIDATION NIXON C OFFENSE DATE 06/11/11 PAGE NO.  4

| AUDIT DATE | TRAN DATE | TRANSACTION DESCRIPTION | TRAN CODE | CHARGES | DEPOSITS | REFER. NO. | PAYMENT CHECK NUMBER |
|------------|-----------|------------------------|-----------|---------|----------|------------|----------------------|
| 10/19/12 | 10/19/12 | TRNS F | 088 | | 2.00 | F02797 | |
| 10/19/12 | 10/19/12 | FINE | 061 | | 100.00 | F02797 | |

PAYMENT TYPE WI    THE RECEIPT ABOVE WAS PAID BY - DEFF WI

| | | | | | | | |
|------------|-----------|------------------------|-----------|---------|----------|------------|----------------------|
| 11/02/12 | 11/02/12 | TRNS F | 088 | | 2.00 | F05059 | |
| 11/02/12 | 11/02/12 | FINE | 061 | | 25.00 | F05059 | |

PAYMENT TYPE WI    THE RECEIPT ABOVE WAS PAID BY - DEFF WI

| | | | | | | | |
|------------|-----------|------------------------|-----------|---------|----------|------------|----------------------|
| 11/16/12 | 11/16/12 | TRNS F | 088 | | 2.00 | F06796 | |
| 11/16/12 | 11/16/12 | FINE | 061 | | 100.00 | F06796 | |

PAYMENT TYPE WI    THE RECEIPT ABOVE WAS PAID BY - DEFF WI

| | | | | | | | |
|------------|-----------|------------------------|-----------|---------|----------|------------|----------------------|
| 12/21/12 | 12/21/12 | TRNS F | 088 | | 2.00 | F10539 | |
| 12/21/12 | 12/21/12 | FINE | 061 | | 100.00 | F10539 | |

PAYMENT TYPE WI    THE RECEIPT ABOVE WAS PAID BY - NIXON WI

| | | | | | | | |
|------------|-----------|------------------------|-----------|---------|----------|------------|----------------------|
| 01/22/13 | 01/22/13 | TRNS F | 088 | | 2.00 | F13569 | |
| 01/22/13 | 01/22/13 | FINE | 061 | | 100.00 | F13569 | |

PAYMENT TYPE WI    THE RECEIPT ABOVE WAS PAID BY - NIXON WI

| | | | | | | | |
|------------|-----------|------------------------|-----------|---------|----------|------------|----------------------|
| 02/28/13 | 02/28/13 | TRNS F | 088 | | 2.00 | F27667 | |
| 02/28/13 | 02/28/13 | FINE | 061 | | 100.00 | F27667 | |

PAYMENT TYPE WI    THE RECEIPT ABOVE WAS PAID BY - NIXON WI

------------------------- PRESS PA1 KEY FOR MORE RECORDS  -------------------------

21

```
               C R I M I N A L   C O U R T   F E E   D O C K E T
CASE NO. F-1121243-X  NAME VALIDATION NIXON C OFFENSE DATE 06/11/11 PAGE NO.  5
  AUDIT     TRAN    TRANSACTION    TRAN                      REFER. PAYMENT CHECK
  DATE      DATE    DESCRIPTION    CODE    CHARGES   DEPOSITS  NO.   NUMBER
-------- -------- ------------- ---- ---------- ---------- ------ ------------

04/04/13 04/04/13 TRNS F         088                2.00  F41576
04/04/13 04/04/13 FINE          061             100.00  F41576
  PAYMENT TYPE WI    THE RECEIPT ABOVE WAS PAID BY - NIXON WI
05/03/13 05/03/13 TRNS F         088                2.00  F47425
05/03/13 05/03/13 FINE          061             100.00  F47425
  PAYMENT TYPE WI     THE RECEIPT ABOVE WAS PAID BY - DEFF WI
06/07/13 06/07/13 TRNS F         088                2.00  F54046        90012
06/07/13 06/07/13 FINE          061             100.00  F54046        90012
  PAYMENT TYPE CC    THE RECEIPT ABOVE WAS PAID BY - NIXON CC WI
07/26/13 07/26/13 TRNS F         088                2.00  F60301          146
07/26/13 07/26/13 FINE          061             119.00  F60301          146
  PAYMENT TYPE CC    THE RECEIPT ABOVE WAS PAID BY - DEFF WI CC
----------------------- PRESS PA1 KEY FOR CASE BALANCE -----------------------
```

22

# CRIMINAL COURT FEE DOCKET

CASE NO. F-1121243-X   NAME VALIDATION NIXON C OFFENSE DATE 06/11/11 PAGE NO.   6

INI DATE    /  /                    B/A    CURR STA       /  /

PREV STA       /  /

*** CASE/BOND NO. TOTALS AND BALANCE ***

|                     | COSTS   | FINES    | BOND FORF. | SP/TRUST FUNDS |
|---------------------|---------|----------|------------|----------------|
| PREV AMT ASSESSED   | .00     | .00      | .00        |                |
| AMOUNT ASSESSED     | 270.00  | 1,000.00 | .00        | .00            |
| AMOUNT PAID         | 270.00  | 1,000.00 | .00        | .00            |
| UNPAID BALANCE      | .00     | .00      | .00        | .00            |

*** CREDITS ***

| AMOUNT PROBATED  | .00 | .00 | DISBURSED        | .00 |
|------------------|-----|-----|------------------|-----|
| AMOUNT WAIVED    | .00 | .00 | AVAILABLE        | .00 |
| AMOUNT J/T SERVED | .00 | .00 | COLL FEE ASSESSED |   |
| AMOUNT COMM SERV | .00 | .00 | COLL FEE PAID    |     |
| ADJUSTED BALANCE | .00 | .00 | COLL FEE BALANCE |    |

NEXT    ¢CRIN

23

## ABBREVIATION          EXPLANATION

JSF4                JUDICIAL SALARY FEE

CHAP                CHILD ABUSE PREV FUN

CLK                 CLERK'S FEE

IDF                 INDIGENT DEFENSE FEE

TECH                CDC TECHNOLOGY FEE

CHSF                COURT HOUSE SEC FEE

RMPF                RECORDS MGT & PRES

CCC                 CONS STATE FEES

DNAF                DNA FEE

CCRM                COUNTY RECORDS MGT

APAT                COURT APPOINTED ATTORNEY FEE

SJURY               JURY FEE

JURY                JURY FEE

DR&IN               DR&IN STATE PORTION

FINE                FINES

IP PLN              INSTALLMENT PLAN

SHF                 SHERIFF'S FEE

**The State of Texas §**

**County of  Dallas   §**

### CLERK'S CERTIFICATION

I, Gary Fitzsimmons, Clerk of the District Courts of Dallas County, Texas do hereby certify that the documents contained in this record to which this certification is attached are all of the document specified by Texas Rule of Appellate Procedure 34.5(a) or Code of Criminal Procedure Section 11.07(3)(a) including all other documents timely requested by a party to this proceeding under Texas Rule of Appellate Procedure 34.5(b). and that have been filed with the trial court clerk, and unless otherwise indicated in this record.

GIVEN UNDER MY HAND AND SEAL at my office in Dallas County, Texas on this: <u>May 15, 2015</u>



Clerk Signature: **JAMEKA  RAND**

Name:  JAMEKA RAND

25

## NO. F1121243X

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL DISTRICT COURT |
| | § | |
| vs. | § | NO. 6 of |
| | § | |
| CLEVELAND NIXON | § | DALLAS COUNTY, TEXAS |

## DESIGNATION OF COURT REPORTER'S RECORD

NOW COMES counsel for Cleveland Nixon and hereby designates the Reporter's Record for purposes of his appeal from the "Order on Defendants' Motion for Bond Pending Appeal" in this case:

The reporter's record from the hearing of October 14, 2014, which has already been prepared by the reporter and is designated as Volume 5 in the main appeal, is requested to be filed with the Fifth Court of Appeals sitting in Dallas, Texas.

Respectfully submitted,

DYER & LIBBY
1305 Prairie St., Suite 100
Houston, Texas 77002
Tel: (713) 222-7757
Fax: (713) 222-7758

By: _____
James H. Dyer
State Bar No. 06315700
Joseph D. Libby
State Bar No. 12318500
josephlibbyattorney@yahoo.com
Attorney for Cleveland Nixon

## CERTIFICATE OF SERVICE

This is to certify that on April 13, 2015, a true and correct copy of the above and foregoing document was served on the District Attorney's Office, Dallas County, by facsimile transmission to 214-653-5774.

_____
James H. Dyer/Joseph D. Libby

FILED
2015 APR 13 PM 2: 23
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
_____ DEPUTY

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE CRIMINAL DISTRICT COURT |
| | § | |
| vs. | § | NO. 6 of |
| | § | |
| CLEVELAND NIXON | § | DALLAS COUNTY, TEXAS |

## DESIGNATION OF CLERK'S RECORD

NOW COMES counsel for Cleveland Nixon and hereby designates the Clerk's Record for purposes of his appeal from the "Order on Defendants' Motion for Bond Pending Appeal" in this case:

The clerk's record requested consists of the following:

1. The document labelled "Pass Slip" and shown to have been filed 10-13-2014;
2. The document labelled "Docket Sheet" and show to have been filed 1-1-32014;
3. The document filed under "document type" on 4-2-2014 as "Motion-Miscellaneous Criminal" and entitled "Order on Defendant's Motion for Bond Pending Appeal".

Respectfully submitted,

DYER & LIBBY
1305 Prairie St., Suite 100
Houston, Texas 77002
Tel: (713) 222-7757
Fax: (713) 222-7758

By: _____
James H. Dyer
State Bar No. 06315700
Joseph D. Libby
State Bar No. 12318500
josephlibbyattorney@yahoo.com
Attorney for Cleveland Nixon

**FILED**
2015 APR 13 PM 2:23
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
_____ DEPUTY

### CERTIFICATE OF SERVICE

This is to certify that on April 13, 2015, a true and correct copy of the above and foregoing document was served on the District Attorney's Office, Dallas County, by facsimile transmission to 214-653-5774.

_____
James H. Dyer/Joseph D. Libby